STURDEVANT and others vs. MATHER, impleaded with STOWERS and others.

*Tax title, who may acquire—Right of mortgagee to acquire title against mortgagor —Tax deed, how to be sealed.*

1. Grantee in a warranty deed from one who had no valid title, not having acquired possession under that deed, may take title by purchase of a tax certificate.

2. *It seems* that a mortgagee (not in possession) may acquire title as against the mortgagor by purchase under a superior lien, whether at a tax sale or at a sheriff's sale under a prior judgment. Per DIXON, C. J. It was, however, not necessary to decide that question in this case.

3. Prior to ch. 66, Laws of 1854, a tax deed required the *private* seal of the officer executing it.

APPEAL from the Circuit Court for *La Fayette* County.

The case is stated in the opinion. The appeal was by the plaintiffs from a judgment dismissing the complaint as to *Mather*.

*Buttrick, Hill & Hall,* for appellants:

1. A mortgagee cannot, either directly or indirectly, by or through a tax sale, acquire a title adverse to his mortgagor.

*Blake v. Howe*, 1 Aiken, 306 ; *Willard v. Strong*, 14 Vt., 532 ; Blackwell on Tax Titles (ed. of 1864), p. 399 ; *Douglas v. Dangerfield*, 10 Ohio, 152 ; *Ballance v. Forsyth*, 13 How. (U. S.), 18 ; *Voris v. Thomas*, 12 Ill., 442 ; *Glancy v. Elliott*, 14 Ill., 456 ; *Chambers v. Wilson*, 2 Watts, 495. A mortgage is deemed both in law and equity a conveyance of the legal estate in trust, first as a security for the debt, second for the benefit of the mortgagor, who holds an equitable estate in the land. *Croft v. Bunster*, 9 Wis., 508 ; 4 Kent's Com., 155. In short, the legal title passes from the mortgagor to the mortgagee, by virtue of the mortgage. If the lands are unoccupied, then, by the reasoning in *Knox v. Cleveland*, 13 Wis., 245, this transfer of the legal estate carries with it the possession. *Stowers*, then, from 1847, was really a mortgagee in possession of the lands in controversy, and a tenant in common with the other owners. He stood precisely in Mrs. Stratton's shoes in regard to these lands. She was, by law, liable to pay the taxes on the whole lands. Claiming under Mrs. Stratton, he was bound to preserve and protect the estate. It was his interest to do so, to preserve his security, and his right to do so by sec. 161, ch. 18, R. S. 1858. His right to pay the taxes is unquestioned, and if he does pay them the amount may be tacked to the original lien. He cannot, however, by procuring a conveyance to himself, create an adverse title to the mortgagor. *Holridge v. Gillespie*, 2 Johns. Ch., 30. 2. A conveyance from a purchaser, under void foreclosure proceedings, is ineffectual to transfer the entire title to the purchaser, divested of the rights of the heirs, but it does operate as a transfer of the mortgage interest. *Stark v. Brown*, 12 Wis., 581. This conveyance from *Stowers* to *Mather* had no greater effect. By conveying his interest in the lands to *Mather*, what other or greater estate could *Stowers* create in his grantee than he himself had? *Mather* was bound to take notice of the equities existing on the part of the plaintiffs, and cannot claim the privileges of a *bona fide* purchaser. He has then merely stepped into the shoes of *Stowers*, and tak-

en upon himself the position of mortgagee in possession of the lands, and a tenant in common with the heirs of Comstock. 3. One tenant in common cannot acquire an adverse title, either directly or indirectly, through a sale of land for taxes, against his co-tenant. The possession of one tenant in common is the possession of all. The issue and recording of a tax deed cannot change the constructive possession; hence it is impossible for the holder of a tax title in such a case to acquire an adverse possession without actual occupation, and an open and notorious abandonment of his allodial title. This doctrine is fully settled in the case of *Page v. Webster*, 8 Mich., 263. See also *Overton v. Woolfolk*, 6 Dana, 374. Sec. 9, ch. 18, R. S. 1858, and sec. 9, ch. 15, R. S. 1849, provide that "the undivided real estate of any deceased person may be assessed to the heirs or devisees of such person, unless occupied·by some other person to whom it may be assessed, without designating them by name, until they shall have given notice to the assessor of the division of the estate, and the names of the several heirs or devisees; and each heir and devisee shall be liable for the whole of such tax, *and shall have a right to recover of the other heirs and devisees their respective proportions thereof, when paid by him.*" This is simply declaratory of the common law. Applying such law to this case, had Mrs. Stratton been in possession of the land in La Fayette county upon which tax deeds have issued, she would have been liable for the whole tax as one of the heirs of Comstock's estate. Her transfer to *Stowers*, and the subsequent proceedings on the part of *Stowers*, carried that estate and the incidents along with it. Her assigns could do nothing with the estate that she could not. As against her co-tenants, as in *Page v. Webster*, 8 Mich., 263, she and her assigns have done nothing but what the law rendered necessary for the preservation of the estate. *Stowers* might have abandoned his security, and perhaps Mrs. Stratton or her assigns could not have recovered damages for his neglect; but having attempted to deal with the estate, he must conform to the rules

of equity and deal honestly. The same is true of *Mather*, for he stands in *Stowers'* place.—The plaintiffs, if entitled to re-deem at all, are entitled to.redemption of the whole estate. 4 Kent's Com., 162, 163; Hoffm. Ch. Pr., 157; *Palk v. Lord Clinton*, 12 Ves., 48 ; 2 Root, 333 ; 27 Barb., 233.

*P. A. Orton*, Jr., for respondent, to the point that under the instrument executed to *Stowers* by Mrs. Stratton, no legal right to the land or to the possession thereof passed, cited *Tallman v. Ely*, 6 Wis., 257. 2. To the point that even a legal mort-gagee, though *to some extent* a trustee for the mortgagor, not permitted to obtain, *by virtue of his situation*, any advantage of the mortgagor, and held to account, when in possession, for the rents and profits, is yet not under the same restrictions as a general trustee in regard to acquiring adverse title, he cited *Holridge v. Gillespie*, 2 Johns. Ch., 30; *Slee v. Manhattan Co.*, 1 Paige, 80 ; *Dale v. McEvers*, 2 Cow., 119. If there be no legal or equitable obligation on the part of the mortgagee to pay the taxes, he must be at liberty to obtain and enjoy a tax title. Sec. 161, ch. 18, R. S., *permits* the mortgagee to pay the taxes and add the amount to the mortgage debt; but it does not *compel* him to do so. 5 Johns. Ch., 101. But counsel argued that however it may be with the legal mortgagee, who is a trustee *sub modo* of the legal estate, the equitable mortgagee holds nothing in trust. 3. The acquisition of the title by the county extinguishes that of the Strattons and of *Stowers*, if any ; and the latter might subsequently acquire title from the coun-ty. Blackwell, 472 ; *Kirkpatrick v. Mathiot*, 4 W. & S., 251. 4. Should the court be of opinion that the plaintiffs have es-tablished a right to redeem as against *Stowers*, no such right exists as to *Mather*, who is an innocent purchaser, in good faith, of *Stowers'* title, taking a warranty deed therefor. Unless *Mather* be charged with notice of the trust *Stowers* was bound to execute, he takes the estate free from such trust. Sec. 10, ch. 84, R. S. 1858. No such notice is shown or even alleged in the complaint, and no *lis pendens* was filed in the foreclosure

suit. 5. The tax deeds taken by *Mather* under the act of 1859, are regular, and *prima facie* evidence of title in him. No fiduciary relation exists between him and the plaintiffs. He purchased *Stowers'* title to these lands, which are only a small portion of those upon which *Stowers* had a lien. He did not purchase *Stowers'* claim so as to be affected in any wise by it, or the relations springing from it. The deed from *Stowers* to him is not even a *pro tanto* assignment of *Stowers'* claim, unless *Mather* elects so to consider it. The plaintiffs cannot compel him to accept the position of mortgagee. There is no privity of contract between them and him. 6. Counsel further argued that in no event could plaintiffs redeem more than *one fifth* of the lands claimed by *Mather*.

DIXON, C. J. The facts of this case are correctly stated by the counsel for the respondent as follows : This action is brought to redeem certain lands described in the complaint. The defendant *Mather* claims to be the owner in fee of a portion of those lands, and in his answer disclaims any interest in the remainder. At the trial in the circuit court, the complaint as to *Mather* was dismissed. From this final judgment the plaintiffs have appealed to this court. A brief statement of the facts will assist in the application of the law. On the 7th day of July, 1846, Lydia Stratton, wife of Hull Stratton, as one of the five heirs of Matthias C. Comstock, deceased, was seized of an undivided fifth of the lands described in the complaint, of which Comstock died seized. On that day Lydia Stratton and her husband executed and delivered to the defendant *Stowers* the instrument hereinafter set forth. In 1847, the taxes levied on that portion of the lands now claimed by *Mather* were not paid; and on the 11th day of April, 1849, these lands were sold for such unpaid taxes, to La Fayette county ; and on the 21st day of December, 1852, said lands remaining unredeemed, the clerk of the board of supervisors of La Fayette county made deeds of said lands to said county, in pursuance of the

provisions of sec. 95, ch. 15, R. S. 1849—a copy of one of which deeds is set forth in the finding. In pursuance of a resolution conferring the authority so to do, passed by the board of supervisors, the clerk of the said board, in conformity with the provisions of sec. 12, ch. 22, Laws of 1859, by two deeds —one executed on the 29th day of December, 1859, and the other on the 23d day of February, 1860,—conveyed all of said lands now claimed by *Mather* to the defendant *Stowers*. All these deeds, immediately upon their execution, were duly recorded. All the lands claimed by *Mather* have always been unoccupied.

On the 1st day of January, 1861, defendant *Stowers* conveyed to *Mather* the lands now claimed by the latter, by a deed containing full covenants, which deed was duly recorded.

Upon the lands claimed by *Mather*, the taxes for 1857 were unpaid; and on the 14th day of September, 1858, such lands were sold for said taxes to La Fayette county, and remained unredeemed until deeds were due. On the 16th day of September, 1861, the county assigned the certificates of this last sale to the defendant *Mather*, and on the same day he took a tax deed for said land, which deed was on the day of its date recorded, and is copied in the finding of the court. These lands were again sold for taxes in 1859, to the county of La Fayette; and on the 4th day of December, 1862, the certificates of sale were assigned to *Mather*, and on the same day tax deeds were made to him, and duly recorded, and are copied in the finding of the court. These lands were again sold for taxes in 1860, to the county, and afterwards the certificates were assigned to *Mather*, who, on the 23d of July, 1863, took a tax deed of a portion of the lands now claimed by him, which deed was on the same day recorded, and is copied in the finding of the court. In 1861, 2 and 3, *Mather* bought the lands he claims, at tax sale.

On the 12th day of November, 1856, the defendant *Stowers*

filed a bill in chancery, in La Fayette county, against Lydia and Hull Stratton, to foreclose the lien created by the said written instrument, as to all the lands affected thereby, of which the lands claimed by *Mather* are but a small portion. Hull Stratton was dead at this time, so that his name in the proceedings was superfluous. Lydia failed to appear in the action ; and on the 22d day of November, 1857, judgment *pro confesso* was rendered therein against the defendants. Afterwards Lydia Stratton appeared, and on her motion, on the 13th day of July, 1858, the said judgment was vacated and set aside. Afterwards, on the 11th day of August, 1858, the plaintiff therein filed his amended complaint under the code. On the 4th day of September, 1858, Lydia Stratton answered the said amended complaint. On the 13th day of November, 1858, Lydia Stratton died. This fact, however, does not appear by the record in that case. On the 3d of January, 1859, judgment of foreclosure in form was rendered in favor of the plaintiff and against the defendants, both of whom were at that time dead. On the 29th of December, 1859, the sheriff sold lands described in the finding under said judgment, to *Stowers*, the plaintiff in that suit. The interest so sold is an undivided fifth of the lands now claimed by *Mather*. This sale was afterwards confirmed, and a deed made to *Stowers*. No notice of the pendency of this action, as required by sec. 37 of the code, was ever filed.

On the 12th day of January, 1858, Lydia Stratton, by her deed of warranty, conveyed her interest in these lands to Lucretia Durkee, who afterwards, on the 18th of March, 1863, died intestate, leaving two children, *William H. Durkee*, and *Anna C. Durkee*, since married to the plaintiff *Stephen A. Sturdevant*, who are the plaintiffs in this action.

Upon these facts the plaintiffs claim a right to redeem an undivided fifth of the lands claimed by *Mather*, from the lien created by the said written instrument, and to redeem all said lands from the tax deeds under which *Mather* claims the fee,

not only to the one fifth formerly owned by the grantor of the plaintiffs' ancestor, Lydia Stratton, but the remaining four-fifths, owned formerly by Mrs. Stratton's co-heirs, of whom nothing is known in this case.

The instrument executed by Lydia Stratton and her husband to the defendant *Stowers*, and which may be properly denominated an equitable mortgage, is in these words:

"Know all men by these presents, that we, Hull Stratton and Lydia Stratton his wife, both of the village of Binghamton, Broome county and state of New York, for and in consideration of the sum of five hundred dollars to us in hand paid by *Uriah M. Stowers*, of Binghamton, aforesaid, do hereby sell, transfer, assign, convey and set over unto said *Uriah M. Stowers*, his heirs and assigns, the amount of five hundred dollars of our right, title and interest, and the right, title and interest of each of us, in the lands, funds and property which were left by the late Matthias C. Comstock, of Galena, deceased, and we hereby authorize and empower said *Stowers* to collect and receive in our name, for his own sole and undivided use, from any and all persons, and particularly from any agent or agents having charge of the lands, property and funds which were left by the said Matthias C. Comstock, deceased, said amount of five hundred dollars, with interest from this date. And we authorize and direct that said *Stowers* shall receive said amount of five hundred dollars and interest from the first moneys and effects that shall be coming to us from the estate of said deceased. And the receipt of said *Stowers*, or of any individual to whom he shall assign this instrument, or of any person whom he shall or may appoint to receive such amount, to any person, for such sum of five hundred dollars and interest, shall be good and sufficient voucher to any and every person paying the same.

This instrument or conveyance shall be a lien on our and each of our interests in the lands, funds and property of the

estate of said deceased. This instrument shall bind us and each of us, our heirs, executors and administrators.

The property and funds out of which this instrument designs that said *Stowers* shall receive and draw the above mentioned sum, is the estate of said Comstock, deceased, to which said Lydia Stratton (before marriage Lydia Comstock) became part owner on said Comstock's death as heir-at-law.

It is therefore our intent that whenever said amount of five hundred dollars and interest shall be paid to said *Stowers*, in pursuance of this instrument, such amount shall be charged as paid on account of said Lydia's share in said estate, or said Hull Stratton's interest in the same as her husband.

In witness whereof, the said parties have hereunto set their hands and seals, this 7th day of July, A. D. 1846, at Binghamton aforesaid.

HULL STRATTON,    [Seal.]

LYDIA STRATTON,    [Seal.]

Signed, sealed and delivered in presence of ——"

Upon these facts, the principal, I may say the only, question argued here has been, whether the relations of *Stowers* were such as to preclude his acquiring and holding title by tax deed as against Mr. and Mrs. Stratton, the mortgagors, and those claiming under them ; it being contended for the plaintiffs that his position and duties as mortgagee were inconsistent with the character of a purchaser, and that he could not, as against them, become a purchaser on his own account. After much time spent in the investigation of this question, I have finally concluded that it is not presented in this case. It appears that the deed to the county of La Fayette under which *Stowers* claimed title, was sealed with the seal of the county, instead of the private seal of the clerk of the board of supervisors who executed it. We held in the case of *Eaton v. North*, just decided, that prior to the passage of the act of 1854 (chap. 66, Laws of 1854, sec. 4,) the seal of the officer executing the deed was required. It follows that the county acquired no title, and

consequently that none passed to *Stowers*, by the conveyance from the county to him. As equitable mortgagee under the instrument executed by Mr. and Mrs. Stratton, *Stowers* had no estate in the lands, certainly no legal estate. His remedy was by suit in equity for the establishment of his lien, and to have the lands sold. 3 Powell on Mort., 1060*a*. The proceedings taken for that purpose in the action commenced in November, 1856, are conceded to have been inoperative and void. *Stowers* had, then, at the time of his conveyance to *Mather*, no title or interest which he could transfer. *Mather* acquired neither title nor possession by virtue of that conveyance. He stood after as before a stranger to the title, and as such could, in my judgment, purchase and take title for himself. He did so by the tax deed of September 16th, 1861, which is regular on its face, and had been recorded more than three years before the commencement of this action. He insists upon that deed as a protection against the relief demanded in the complaint. I think he is entitled to such protection. Whether, after having acquired title by that deed, he could afterwards acquire any additional rights, or fortify that title by taking other deeds upon sales subsequently made for the non-payment of taxes, is a question which need not be considered. It is enough that he has shown *prima facie* a good title under the first tax deed executed to himself.

Upon the question argued, whether the mere relation of mortgagee will prevent the person so related from acquiring title to the mortgaged premises by purchase at a tax sale, I may with propriety refer to *Williams v. Townsend*, in the Court of Appeals, 31 N. Y., 415, as the only case to be found, so far as my researches have extended, in which the question was directly presented and decided. It was the unanimous opinion of the judges in that case, upon facts which made much more strongly against the right of the mortgagee than any here presented, that no such relation of trust or confidence existed between the mortgagor and mortgagee as to preclude the latter

from becoming a purchaser. I may also refer to *Walthall v. Rives*, 34 Ala., 91, and *Harrison v. Roberts*, 6 Fla., 711, in which it was held that a mortgagee may purchase and hold a paramount title under older judgment liens; and to *Chapman v. Mull*, 7 Ired. Eq. R., 292, and the observations of Sir THOMAS PLUMER, M. R., in *Cholmondeley v. Clinton*, 2 Jac. & Walk., 181 *et seq.*, upon the general question as to how far the principles applicable to dealings between trustee and *cestui que trust* apply to the case of mortgagee and mortgagor.

I think the judgment of the court below dismissing the complaint as to the defendant *Mather*, should be affirmed.

*By the Court.*—The judgment is affirmed.