BURCHARD and another, Respondents, vs. ROBERTS, Appellant.

*November 3 — November 22, 1887.*

*(1) Ejectment: Parties. (2, 3) Mortgages: Tax title acquired by mortgagee: Redemption.*

1. Whether in ejectment the objection that the actual occupant of the land has not been joined as a defendant may be made for the first time at the final hearing, not determined. The evidence in this case failing to show that the land was actually occupied, the action was maintainable against the person claiming title alone.
2. A mortgagee cannot cut off the equity of redemption by acquiring an adverse title under tax proceedings.
3. The mortgagor of land was not the true owner, but was in possession, and the taxes were properly assessed against him. He failed to pay the taxes, and the land was sold for nonpayment thereof, and was purchased for the benefit of the mortgagees. *Held,* that both as to the mortgagor and the real owners, such purchase operated as a payment of the taxes and a redemption of the land therefrom, and the tax deed issued thereon was therefore void.

APPEAL from the Circuit Court for *Waupaca* County.

Ejectment for certain land situated in the county of Waupaca. A patent therefor was issued July 18, 1855, by the state of Wisconsin to Austin C. Burchard, who died intestate, September 10, 1863, seized of the land in controversy. He left surviving him a widow and two children. The latter are the plaintiffs. *Nellie* was born December 27, 1858, and *Horace* on November 19, 1861. He left no other heirs. The widow conveyed her interest in the estate of her deceased husband to the plaintiffs before this action was commenced, which was on August 22, 1883. Such is the title of the plaintiffs.

The title of the defendant is as follows: November 9, 1866, Charles Burchard, the father of Austin C., the patentee of the land in question, executed a conveyance thereof to one Charles Nes, who, on June 25, 1867, made a deed thereof

to Maggie Doty.   Giles Doty, the husband of Maggie, was the real purchaser from Charles Burchard.   The Dotys went into possession of the land in 1866, and remained in possession thereof until the spring of 1881.   In 1875 they mortgaged the land to one Mary Cottrill, since deceased, and one Virginia Thompson.

June 28, 1879, Giles and Maggie Doty executed a conveyance of this and other land to Vincent Roberts, who was the agent of the holders of those mortgages, in trust for such holders and the holder of two other mortgages on such other land, for the payment of the mortgage debts, and in trust also for Giles Doty for whatever of the property should remain after such payments.   Vincent Roberts thereupon executed to Doty a contract to the effect that when the latter should fully pay to Roberts the amount of such debts, to wit, $5,100, and interest as therein specified, it should be in full for the price or purchase money of the lands conveyed by such trust deed, which should then be reconveyed to Doty.   Also that Doty should pay all taxes assessed on such lands, and should hold the lands as tenant by sufferance of Vincent Roberts.   Before this action was commenced, probably in 1882, Vincent Roberts quitclaimed the lands so conveyed to him in trust, to Horton Cottrill, administrator of the estate of Mary Cottrill, who held the mortgage so executed to her by the Dotys.

In 1879 the land in controversy was assessed to Giles Doty.   It was returned to the county treasurer for nonpayment of the taxes assessed upon it for that year, and in May, 1880, was duly sold by such treasurer to Vincent Roberts.   Certificates of such sale were thereupon issued to him.   He paid therefor the amount due for taxes and charges thereon.   This purchase was so made, and the certificates taken, for the sole use and benefit of the Cottrill estate and the other beneficiaries in such trust deed.

In the spring of 1881 the Dotys ceased to occupy the

land, and one Bowker then went into the occupancy thereof and cultivated the same as the tenant of Vincent Roberts. Vincent Roberts assigned said tax-sale certificates to Bowker, to whom a tax deed was executed June 22, 1883. A few days later Bowker, at the request of Vincent Roberts, conveyed the land covered by such tax deed to the defendant, *John Roberts*, who is the son of Vincent. Bowker paid nothing for the certificates, and never claimed any interest in the title to the land, but took the tax deed for the use and benefit of Vincent Roberts and those whom he represented. The defendant paid no consideration for the tax deed.

In December, 1882, the plaintiffs commenced an action in the circuit court of Waupaca county against Vincent Roberts and Giles Doty, to recover the land in controversy here. In March following, Horton Cottrill was, by order of the court, made a defendant to that action by service of summons and complaint therein upon him. Such action was removed to the circuit court of the United States, and was pending in that court when this action was commenced.

This action was tried by the court without a jury. The above facts are established by the pleadings, the uncontradicted evidence, and the findings of fact thereafter made and filed by the circuit judge. The judge also found that the plaintiffs are the owners in fee simple of the land in controversy; that the defendant paid nothing for the land or on account of the conveyance thereof to him; that he took such conveyance for the purpose of defeating the title of the plaintiffs in the action then pending in the United States court; that since the execution of such conveyance the apparent and nominal possession of the land has been in the defendant secretly for the Cottrills, they having received the rents and profits of the land; and that Bowker was in possession under the Cottrills from the spring of 1881 to the time he took the tax deed, By the term "the

Cottrills" is meant the heirs of Mary Cottrill, represented by Horton Cottrill, the administrator of her estate.

The judge also filed the following conclusions of law: "(1) The purchase of lands described in the complaint by Vincent Roberts at the tax sale of 1880 was a payment of the tax, and that the deed which was issued on such sale is therefore invalid. (2) The plaintiffs were at the commencement of the action owners of the land described in the complaint, and their estate therein was in fee simple, and they were at the commencement of this action, and are now, entitled to possession thereof. (3) The defendant asserted such claim to said lands at the commencement of this action as entitled these plaintiffs to maintain this action, and that at the commencement thereof the defendant unlawfully withheld the possession thereof from the plaintiffs."

Judgment for the plaintiffs was afterwards entered, pursuant to the findings of fact and conclusions of law, for the recovery of the land claimed, and for costs. The defendant appeals from the judgment.

For the appellant there were briefs by *M. B. Patchin*, attorney, and *E. P. Smith*, of counsel, and oral argument by *Mr. Smith*. They contended, *inter alia*, that the defendant, *Roberts*, was never in possession of the land, but the same was, at the commencement of the action, and still is in the actual possession of Bowker, who should therefore have been made a party defendant. The failure to take this objection by demurrer or answer cannot be deemed a waiver thereof in this action of ejectment. The issue is possession, and a general denial was sufficient to meet the question. A judgment would be wholly ineffectual if the occupant of the land was not made a party. *Eaton v. Tallmadge*, 24 Wis. 219; *Sherman v. Bemis*, 58 id. 349; *Lutheran E. Church v. Gristgau*, 34 id. 336; *Deery v. McClintock*, 31 id. 195. "The mortgagee had no duty to perform to the plaintiffs or towards the mortgagor or the mortgaged prem-

ises that precluded him from buying at the tax sale; he was under no obligation to pay the taxes." *Williams v. Townsend,* 31 N. Y. 415; *Wright v. Sperry,* 25 Wis. 620; *Smith v. Lewis,* 20 id. 356; *Sturdevant v. Mather,* id. 577; *Link v. Doerfer,* 42 id. 396; *Lybrand v. Haney,* 31 id. 233; *Walthall v. Rives,* 34 Ala. 91; *Harrison v. Roberts,* 6 Fla. 711; *Chapman v. Mull,* 7 Ired. Eq. 292; *Cholmondeley v. Clinton,* 2 Jac. & W. 1; *Conn. Mut. L. Ins. Co. v. Bulte,* 45 Mich. 113; *Sands v. Davis,* 40 id. 40; *Moss v. Shea,* 25 Cal. 45; *Bowman v. Cockrill,* 6 Kan. 311; *Stubblefield v. Borders,* 92 Ill. 279; *Marshall v. Davies,* 78 N. Y. 414; *Waterson v. Devoe,* 18 Kan. 223; *Trimm v. Marsh,* 54 N. Y. 599; *Ten Eyck v. Craig,* 2 Hun, 452; *S. C.* 62 N. Y. 406; *Coombs v. Warren,* 34 Me. 89; 1 Jones on Mortg. secs. 711–713, 1134; Blackwell on Tax Tit. (2d ed.), 400.

*Moses Hooper,* for the respondents, to the point that a mortgagee cannot take a tax deed and set it up against the mortgagor, cited *Fisk v. Brunette,* 30 Wis. 102, 104; *Brown v. Simons,* 44 N. H. 475, 477; *Moore v. Titman,* 44 Ill. 367, 370.

LYON, J.   This appeal presents two questions for determination.   These are: (1) Was the action properly brought against *John Roberts* alone?   (2) Was the purchase of the land in controversy by Vincent Roberts at the tax sale of 1880, and the payment therefor of the amount of the taxes and charges due thereon, a payment of the taxes and a redemption of the land therefrom?

1. The statute relating to parties in actions of ejectment contains the following provisions: " If the premises for which the action is brought are actually occupied by any person, such actual occupant shall be named defendant in the complaint; if they are not so occupied, the action must be brought against some person exercising acts of ownership on the premises claimed, or claiming title thereto or some

interest therein, at the commencement of the action. The plaintiff may join as defendant any person claiming title to such premises, with any actual occupant thereof or of some part or parcel thereof, holding as tenant under such person so claiming title or otherwise. . . ." R. S. secs. 3075, 3076. Under these provisions, if Bowker, the grantor of the defendant, was in the actual possession of the land claimed in August, 1883, when this action was commenced, he should have been made a party defendant to the action. In such case the present defendant, *John Roberts*, under whom Bowker was in possession, if at all, is also a proper party defendant, although not in the actual possession of the land.

The circuit court found that Bowker was in the actual possession of the land until he took the tax deed thereof. This was June 22, 1883. Perhaps the court might also have properly found that he retained the possession thereof until he conveyed to the defendant, a few days later. But we find no satisfactory proof that Bowker was in possession when this action was commenced in August following. When asked directly whether he had remained in possession of the land ever since he deeded to the defendant, he answered evasively, as follows: "Since then he has told me that *John Roberts* owned the land; that I was to settle with him for this land; the rent of the land I have not paid for this last year; in fact I have not paid the interest on all the lands I own." Indeed all the testimony on the subject of Bowker's occupancy of the land after the conveyance to the defendant is very general, vague, and unsatisfactory.

It is quite obvious from the testimony that neither the Dotys nor Bowker ever resided upon the land, but only used it for farming purposes. We are left entirely in the dark as to the extent of that use, or, so far as Bowker is concerned, its continuity. A finding that Bowker ceased to occupy the land when he conveyed it to the defendant,

and that it was unoccupied when the action was brought, could not properly be disturbed. This is probably the meaning and significance of the finding that the defendant after such conveyance had " the apparent and nominal possession " of the land. In such case the action was properly brought against the defendant alone, for the taking of the tax deed was a claim of title to the land, which is sufficient under the statute (if the land be unoccupied) to support ejectment against the claimant. We reach this conclusion the more readily because we are satisfied, as the learned circuit judge evidently was, that the title and possession of the land were being manipulated by the two Roberts, father and son, for the purpose of embarrassing and defeating the plaintiffs in their pending action in the federal court, and that Bowker was a pliant tool in their hands to aid in accomplishing such purpose. This was an unjustifiable interference with the course of justice by Bowker and the defendant, who were not parties to that action, and because they were acting in unison it would be strict justice to hold, in analogy to the law which makes a conspirator liable for the acts of his co-conspirators in furtherance of the object of the conspiracy, that the act of one, or the possession of one, intended by both to affect the plaintiffs unfavorably in their other suit, is the act or possession of the other as well.

We conclude that the action is well brought against the defendant alone. It is not determined whether, conceding that Bowker should have been made a party, the defendant can, on the final hearing, and without having demurred for defect of parties, take advantage of such defect. Doubtless he might have applied to the court at the proper time for an order compelling the plaintiffs to bring in Bowker (if he was in possession) as a party defendant to the action, but he failed to do so.

2. In considering the second question above suggested,

as to whether the purchase of the land at the tax sale by Vincent Roberts, and the payment therefor of the amount of taxes and charges against it, operate as a payment of the taxes, Cottrill and the other beneficiaries in the trust deed for whose benefit the purchase was made will be regarded as the purchasers. Obviously, such was the legal effect of the transaction. Such beneficiaries stood in the relation of mortgagees of the land. The execution of the trust deed may have had the effect of vesting the legal title to the land in their agent, Vincent Roberts, but such deed, and the defeasance executed by such agent to Doty, operated to preserve the mortgage relation between them, changing the securities, perhaps, to equitable mortgages. Such change, however, does not seem material to the question under consideration.

The taxes of 1879 were assessed against Doty, who was then in possession of the land, claiming title thereto. Under the statute (R. S. sec. 1043) the tax was properly assessed against him and he was legally chargeable therewith. Had he purchased at the tax sale, there can be no doubt the transaction would have operated as a payment of the tax, although tax certificates may have been issued to him. *Smith v. Lewis,* 20 Wis. 350; *Bassett v. Welch,* 22 Wis. 175; *Jones v. Davis,* 24 Wis. 229.

The question is whether the mortgagees of the land are in any better condition than Doty, the mortgagor, to acquire title thereto by purchasing at the tax sale and taking certificates of sale. We have been referred to no case decided by this court, and are not aware that there is any such case, in which it is held that a mortgagee may, in this state, cut off the mortgagor's equity of redemption by acquiring title to the mortgaged land under a tax deed. True, several cases determined by this court are cited by the learned counsel for defendant as holding that a mortgagee may thus acquire adverse title, but an examination of those cases will

show that none of them so hold. They will be noticed briefly in their order.

In *Wright v. Sperry*, 21 Wis. 331, 25 Wis. 617, the plaintiff was grantee of the purchaser at a foreclosure sale on a mortgage executed by Sperry, the defendant, on the whole eighty acres of land. Sperry owned only an undivided interest in the land. After such sale he acquired the remaining undivided interest. In the mean time Wright obtained the interest conveyed by a tax deed of the whole, eighty acres issued on a tax sale for nonpayment of the taxes assessed upon the land before such foreclosure sale. Wright was not, therefore, a mortgagee of the land, but was claimed to be a tenant in common with Sperry, and the validity of his tax deed was contested on that ground. The tax deed was held valid, and hence under it Wright was entitled to recover such after-acquired interest of Sperry in the eighty acres in controversy.

*Sturdevant v. Mather*, 20 Wis. 576, was an action to redeem from an equitable mortgage. The mortgagee had acquired the interest conveyed by two tax deeds of the mortgaged premises. Such deeds were held invalid for defective execution. The defendant, Mather, was the grantee of the mortgagee, and after taking such conveyance he also acquired several tax deeds of the same premises. It was held that, under the instrument giving the lien, the mortgagee had no estate in the premises which he could convey to Mather, and hence the latter was a stranger to the original title, and might assert title under his tax deeds to defeat the action.

*Lybrand v. Haney*, 31 Wis. 230, presented no question as between mortgagor and mortgagee. Neither did *Link v. Doerfer*, 42 Wis. 391. The first of these cases decides that one in possession of land under a valid tax deed may maintain an action based upon other tax deeds to him issued on sales for the nonpayment of taxes on the same land, which

he was under no obligation to pay, to foreclose the title and right of the original owner in and to such lands. In *Link v. Doerfer*, it was held that a mere intruder in possession of land without color or claim of title is capable of acquiring adverse title by tax deed or other conveyance to himself.

It is plain that none of the above cases sustain the proposition to which they are cited. On the contrary, we are satisfied on principle and authority, and especially in view of the statute which will presently be cited, that in the present case the purchase of the land at the tax sale for the mortgagees, and the taking of tax certificates thereon, must be regarded as for the protection of the estate and the mutual benefit of the mortgagees and mortgagor. As was said by Dixon, C. J., in *Fisk v. Brunette*, 30 Wis. 102, such purchase and the taking of the certificates must be regarded as so much money advanced to the mortgagor on the faith of the security.

The above reference is to R. S. secs. 1158–1160. These sections, in effect, add the amount so paid for taxes by the mortgagee to the mortgage debt, and extend the security of the mortgage over it. These statutory provisions give the mortgagee an adequate remedy to reimburse himself for the taxes thus paid by him, and are inconsistent with the idea that he may cut off the mortgagor's equity of redemption in the mortgaged premises by acquiring an adverse title thereto under tax proceedings.

Moreover, without regard to statutory provisions, there is high authority for thus holding on general principles of law. Judge Cooley, in his treatise on the law of Taxation, says: "It cannot be said in such a case that either mortgagee or mortgagor is under no obligation to the government to pay the tax. On the contrary, the tax being one that purposely is made to override the lien of the one as well as the title of the other, it might well, as it seems

to us, be held that neither mortgagor nor mortgagee was at liberty to neglect the payment as one step in bettering his condition at the expense of the other, but that the presumption of law should be that the party purchasing did so for the protection of his own interest merely. And so in general are the authorities." Pages 503, 504, and cases cited in notes. This language of Judge Cooley is quoted approvingly in Mr. Freeman's learned note to *Blake v. Howe*, 15 Am. Dec. 684. This doctrine commends itself to our judgments as reasonable and just.

It must be held, therefore, that as to Doty the purchase of the land at the tax sale by Vincent Roberts for the benefit of the mortgagees, operated as a payment of the tax and a redemption of the land therefrom.

It remains to be determined how the plaintiffs are affected by the transaction. Had the mortgagees, instead of purchasing the land at the sale and taking tax certificates, paid the taxes and taken a receipt therefor, there can be no doubt that such payment would have inured to the benefit of these plaintiffs, and no question of a tax lien on the land or tax title on account of such taxes could be raised against them. Holding, as we do, that the transaction above mentioned operated as a payment of the taxes, no good reason is perceived why the same result should not follow, although, instead of paying and taking a receipt therefor, they bid off the land for the amount of the taxes, paid the same, and took certificates of sale. We are quite unable to see how these transactions can operate as a payment as to Doty while as to the other plaintiffs it is the acquiring of a title paramount to theirs.

There are, doubtless, cases elsewhere which hold the opposite doctrine. Whether these cases are based upon statutes differing from ours, or made in the absence of any statute on the subject, we shall not stop to determine. Our

duty is to construe our own statute, and thus settle the law in that behalf in this state.

It will be observed that the statute above cited (secs. 1158–1160) refers only to taxes. No mention is made of any other description of incumbrance which the original lienholder may pay and extend his lien to cover such payment. Hence, if a mortgagee or other lienholder should, for the protection of his lien, purchase a paramount outstanding mortgage or judgment, it is not here decided whether he may or may not acquire an adverse title thereunder which will cut off the mortgagor's equity of redemption in the mortgaged premises.

It follows that the tax deed to the defendant is void. That deed eliminated from the case, there can be no doubt of the plaintiffs' right to recover. Certain acts of Charles Burchard, who sold the land in controversy to Doty, were proved tending to show an interference by him with the land and that he claimed to own it, but nothing appears which can operate to divest the plaintiffs of their legal title thereto.

*By the Court.*— The judgment of the circuit court is affirmed.