Hill vs. Buffington and another.

HILL, Appellant, vs. BUFFINGTON and another, Respondents.

*March 20 — April 27, 1900.*

| 106 | 525 |
|-----|-----|
| 110 | ¹138 |
| 106 | 525 |
| 113 | ⁸492 |

*Cloud on title: Tax certificate purchased by junior mortgagee: Equitable lien: Reimbursement by first mortgagee after purchase on foreclosure sale: Judgments: Estoppel.*

1. The purchase of a tax certificate by a junior mortgagee amounts to the payment of the tax for the protection of the estate, and for the mutual benefit of the mortgagees and the mortgagor; and under sec. 1158, Stats. 1898, the purchaser acquires simply a "further lien" upon the land of the same nature as his mortgage and constituting simply an addition to the mortgage debt of the amount due on the certificate when he acquired it.

2. In an action to foreclose a first mortgage on real estate the complaint alleged that the premises had been sold for the taxes of 1893 and that the sale was unredeemed, but failed to allege that the lien therefor was subject to plaintiff's mortgage, or that plaintiff's mortgage was prior to the claims of a second mortgagee, although he knew that the latter held the certificate for such taxes. Judgment was entered by default, and the plaintiff bid in the premises and acquired title thereto. Subsequently he commenced an action against the second mortgagee, under sec. 3186, Stats. 1898, to set aside said tax certificate as a cloud upon his title. *Held*, that the

plaintiff was estopped from claiming that the foreclosure judgment affected the defendant's equitable rights in respect to the tax certificate.

3. Notwithstanding the fact that defendant's tax certificate was not a lien paramount to plaintiff's mortgage and, after the foreclosure of that mortgage, could not be enforced in any way, a court of equity should not set it aside as a cloud on the title except upon condition that plaintiff reimburse defendant for his expenditure by reason thereof which inured to plaintiff's benefit.

[4. CASSODAY, C. J., is of the opinion that reimbursement for defendant's expenditures by reason of the tax certificate was properly required as a condition of setting it aside, on the ground that it was a lien in equity paramount to plaintiff's mortgage.]

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

The plaintiff, as owner of ten houses and lots described, brings this action to set aside the tax certificates on the sale of such lots, respectively, May 15, 1894, for the taxes of 1893, and to forever bar the defendant *Buffington,* and all persons claiming under him, from any right or title to any of such lots by virtue of such tax certificates. The facts are stipulated and found by the court, and are, in effect, as follows:

On June 1, 1892, Alexander McEachern gave to the plaintiff a mortgage on twenty lots therein described, including the lots in question, of $13,000, and the same was recorded June 8, 1892. On July 1, 1893, McEachern gave to the defendant *Buffington* a mortgage on the ten lots in question for $25,000, and the same was recorded on that day. On September 7, 1894, *Buffington* purchased the tax certificates in question on the ten lots covered by his mortgage on the sale of 1894 for the taxes of 1893, to the amount of $534.27. On September 22, 1894, *Buffington* settled with McEachern for part of his mortgage, and satisfied the same of record, and took a new mortgage thereon for $13,000. On December 21, 1894, the plaintiff wrote *Buffington* a letter, stating, in effect, that the interest due on his mortgage December 1, 1894, had not been paid, and that the taxes on the premises

for 1892, 1893, and 1894 remained unpaid, and that he was considering the question of foreclosing his mortgage, and asking *Buffington*, as such second mortgagee, to buy his mortgage. On December 24, 1894, *Buffington* replied by letter to the plaintiff to the effect that the plaintiff's mortgage was more than the full value of the property, especially in view of the plaintiff's expense of foreclosing the same, and informed the plaintiff that he held tax certificates on the lots for the sale of 1894.

In February, 1895, the plaintiff commenced an action to foreclose his mortgage, and got judgment of foreclosure and sale therein May 31, 1895, for $14,478.25. The complaint in that action alleged that McEachern, his heirs, executors, administrators, and assigns, were to pay the taxes, but had failed to pay the taxes for 1892, and the lots were sold therefor May 13, 1893, for $1,677.08, and also had failed to pay the taxes for the year 1893, and the lots were sold thereon May 15, 1894, for $824.11; and alleged that *Buffington* and other defendants therein named had or claimed to have some interest in or lien upon the mortgaged premises, or some part thereof, which interest or lien, if any, had accrued subsequently to the lien of the plaintiff's mortgage. On July 8, 1895, on the petition of the plaintiff, based on McEachern's failure to pay taxes, insurance, water rates, etc., the plaintiff obtained the appointment of a receiver to collect rents, with directions to pay taxes, assessments, water rates, etc., and did collect rents to the amount of $800. On July 28, 1896, the premises described in the plaintiff's mortgage were sold to the plaintiff on his foreclosure judgment for $10,000, which was applied as follows: Costs and disbursements, $448.10; sheriff's fees on sale, $24.10; taxes, except for the year 1893, $3,859.59; applied on judgment, $5,668.21,— total, $10,000. The total due on the judgment at the time was $15,036.30, which, after deducting the money so applied on the judgment, left a deficiency of $9,368.09.

As conclusions of law the court found, in effect, that the tax certificates so purchased and held by *Buffington* constituted a cloud upon the plaintiff's title; that the purchase of such tax certificates was in law a redemption of the ten lots in question from such tax sale of 1894 for the taxes of 1893; that such payment of such taxes by *Buffington* secured to him a lien on the land for the amount so paid additional to his mortgage; that the plaintiff's judgment of foreclosure and sale did not have the effect to extinguish such lien, but the same remained paramount to the lien of the plaintiff's mortgage and his title obtained on such foreclosure sale; that the plaintiff was estopped from asserting that such lien for such taxes had been extinguished; that the plaintiff was entitled to a decree removing such tax-sale certificates from his title upon condition that he first pay to *Buffington* the amount of the face of such tax certificates, and interest at six per cent. from the time of such purchase by him, amounting to $637.15. In default of such payment within thirty days it was ordered that a decree be entered in favor of *Buffington* declaring and establishing a lien upon such lots for the amount of his claim and costs, and that such lots be sold at public auction to satisfy the same, by the sheriff,— such sale to be advertised and conducted in the manner of sales of real estate upon execution.

The plaintiff having failed to pay as thus required, and *Buffington* having waived taxable costs, and having given due notice of the amount due, pursuant to such findings, May 25, 1899, it was ordered, adjudged, and decreed that *Buffington* do have and recover of the plaintiff $637.15, with interest thereon from January 21, 1899, at six per cent., and that such sum constituted a lien in favor of *Buffington* and against the lots described; and the sheriff was thereby directed to satisfy such lien by sale of such lots at public auction, such sale to be advertised and conducted in the manner of sales upon execution. From such judgment the plaintiff appeals.

*H. P. Proctor,* for the appellant.

*T. F. Frawley,* for the respondent *Buffington,* to the point that the plaintiff, having invoked the aid of a court of equity to remove a cloud from the title of his real estate by reason of the existence of defendant's tax certificate, will, as a condition of relief, be required to pay the amount thereof, cited *Miller v. Cook,* 135 Ill. 190, 10 L. R. A. 292; *Reed v. Kalfsbeck,* 147 Ind. 148; *Wistar v. Herting,* 27 Ill. App. 443; *Weston v. Meyers,* 45 Neb. 95; *Loney v. Courtnay,* 24 Neb. 580; *Hall v. Hooper,* 47 Neb. 111; *Morrison v. Hershire,* 32 Iowa, 271; *Clark v. Darlington,* 7 S. Dak. 148; *Mills v. Johnson,* 17 Wis. 598; *Kimball v. Ballard,* 19 Wis. 601; *Pierce v. Schutt,* 20 Wis. 423; *Hart v. Smith,* 44 Wis. 213; *Kaehler v. Dobberpuhl,* 56 Wis. 480; *Fifield v. Marinette Co.* 62 Wis. 532; *Wells v. Western P. & S. Co.* 96 Wis. 116.

WINSLOW, J.   The purchase of the tax certificate by *Buffington* must, under our statute and decisions, be held to have amounted to the payment of the tax for the protection of the estate, and for the mutual benefit of both of the mortgagees and the mortgagor. *Buffington* could not thereby acquire a tax lien upon the land paramount to that of the first mortgagee, nor could he take a tax title which would cut off the first mortgagee or the owner of the equity of redemption.   He acquired thereby simply a "further lien" upon the land as against the mortgagor and all persons then claiming under him; not a lien independent of his mortgage lien, or superior to it or to that of the first mortgage, but of the same nature as his mortgage, and constituting simply an addition to the mortgage debt of the amount due on the certificate when he acquired it.   Stats. 1898, sec. 1158; *Burchard v. Roberts,* 70 Wis. 111.   His lien by virtue of the tax certificate which he held was *apparently* paramount to the lien of the plaintiff's prior mortgage, but not *really* so.   But the fact that such lien was not paramount to plaintiff's mort-

gage, and that no valid tax title could be obtained thereon, is not necessarily decisive of this case. The plaintiff has come into a court of equity, and must, upon familiar principles, do equity; and this rule applies as well to the statutory action under sec. 3186, Stats. 1898, as to the common-law action to remove a cloud from title. *Hart v. Smith*, 44 Wis. 213. By the payment of this tax by the second mortgagee the plaintiff received a distinct and substantial benefit in the protection of his lien from extinction, which could have been accomplished in no other way save by the plaintiff himself paying the tax. Is it, in any sense, equitable to allow the plaintiff to avoid the reimbursement of the defendant for the payment of this sum by which the plaintiff's title has been secured to him? We think not.

Reference to a well-established principle of equity jurisprudence as applied to the law of principal and agent will throw light upon the question. While an agent charged with the duty of caring for his principal's real estate cannot acquire a valid tax title thereto, still, if he does acquire a tax deed, equity will content itself with setting aside the tax title upon condition only of the principal's reimbursing the agent for the money he would himself have been obliged to expend to discharge the lien had the agent not acquired it, with interest thereon. *Dana v. Duluth T. Co.* 99 Wis. 663. The principal must do equity by reimbursing his unfaithful agent so far as the agent's expenditures were beneficial and necessary to protect the principal's title. The present case would apparently call for the application of equitable principles more loudly than the case of the agent, because in the agent's case there is an attempted fraud and breach of trust, which element is entirely lacking in the case before us.

It was strongly argued, however, that the defendant was barred from making any claim by the judgment of foreclosure of the plaintiff's mortgage, because the defendant was made a party to that action and the judgment therein

contained the usual provision cutting off the defendants from all right, title, interest, or equity of redemption in the mortgaged premises. This presents a question of some difficulty, but we think that, under any proper construction of the judgment in the light of the allegations of the complaint, it cannot be said that the question of the equitable rights of the defendant in respect to the tax certificate in question is affected by that judgment. Probably it could have been litigated in that action, and, had the complaint therein alleged that the defendant's interest under the tax certificate was subject to the plaintiff's lien, or merely rested with the usual allegation as to defendant's claims being subordinate to that of the plaintiff, and had the judgment above referred to been rendered upon such a complaint, it would be hard to see why the defendant's rights would not have been barred. But the complaint not only failed to allege that the defendant's tax lien was subject to the plaintiff's mortgage, or to rest on the usual allegation as to priority of the plaintiff's mortgage over defendant's claims, but industriously alleged that the mortgaged premises had been sold for the taxes of 1893 (being the taxes in question), and that the sale was still unredeemed, although the plaintiff then knew that the defendant held the certificate; thereby seemingly recognizing the tax certificate as representing an existing tax lien on the property. This was certainly affirmative notice to the defendant that his claim for taxes paid was not attacked in that action, and doubtless the defendant let that action go to judgment by default relying on this plain recognition of the apparently existing tax lien. In view of this allegation of the complaint, we think that the judgment must be construed simply as cutting off the defendant's second mortgage lien, and not as affecting the question of the taxes, or clothing him with the right to demand of a court of equity the removal of the apparent cloud on his title, consisting of the uncanceled certificate, although, as

Hill vs. Buffington and another. ·

before stated, the tax lien, as well as the second mortgage lien, had ceased to exist. Plain principles of estoppel would seem to prevent the plaintiff from now claiming that his judgment by default cuts off a claim which he expressly recognized and accepted in his complaint. The judgment must be construed as referring to such rights and interests of the defendant as were litigated in the action, or might properly have been litigated under the pleadings. *Pelton v. Farmin*, 18 Wis. 222; *Gilchrist v. Foxen*, 95 Wis. 428.

Furthermore, the relief granted by a default judgment cannot exceed that demanded by the complaint. ·

Upon the whole case the judgment is right and must be affirmed, irrespective of the fact that *Buffington* has no lien on the property that could be enforced under his mortgage or otherwise, but merely controlled a situation clouding the plaintiff's title, which cloud, under the circumstances, a court of equity might properly refuse to remove except upon condition that the party invoking and receiving its aid do equity to *Buffington* by reimbursing him for an outlay which inured to his benefit.

*By the Court.*— Judgment affirmed.

CASSODAY, C. J. I heartily concur in the affirmance of the judgment in this case, and much that is said in the opinion of my brother WINSLOW; but I am unable to understand some of the reasoning by which such conclusion is reached. If the tax certificates held by *Buffington* were not liens upon the land "superior to the plaintiff's first mortgage;" if they were only "apparently paramount to the lien of the plaintiff's prior mortgage, but not *really* so;" if "the tax lien, as well as the second mortgage lien, *had ceased to exist*,"— then I am unable to perceive any ground, legal or equitable, for holding that the plaintiff should repay to *Buffington* what he had advanced for such tax certificates, and interest thereon, as a condition of setting them aside as

clouds upon his title. If those things were all so, then I am unable to perceive how those tax certificates gave *Buffington* "a further lien upon the land." If the purchase of such tax certificates gave *Buffington* no lien upon the land "independent of his mortgage lien," but only a lien "of the same nature as his mortgage, and constituting *simply an addition to the mortgage debt* of the amount due" on the certificates when he acquired them, then I am unable to perceive why the foreclosure and sale under the plaintiff's prior mortgage, which it is conceded cut off *Buffington's* subsequent mortgage, did not also cut off his mortgage debt, including what he so paid for such tax certificates, thus said to be an addition to the mortgage debt.

The sense in which the word "lien" has been used may account for some of the differences of opinion, and perhaps some confusion in the discussion of the question. If it is used in the sense that when *Buffington*, as such mortgagee, purchased such tax certificates they continued as liens at law, drawing the high rate of interest as such certificates, entitling him to tax deeds, with the right to enforce the same, then I apprehend that under the decisions of this court all would agree that such tax certificates were not such liens. But if it is used in the sense that such tax certificates were liens superior to the plaintiff's mortgage, but cognizable only in a court of equity,— as I think they were,— then, as it seems to me, the judgment in favor of *Buffington* was eminently proper and should be affirmed. But, if such certificates were not liens in equity superior to the plaintiff's mortgage, then I see no reason why they should not be set aside without the condition of repayment.

Our statutes did not, in my judgment, prevent such tax certificates from continuing to be liens in equity paramount to the plaintiff's mortgage. The original statute authorized any person who had a lien by mortgage upon any lands on which the taxes had not been paid to "*pay such taxes*, and

the interest and charges thereon," and that the *tax receipt taken therefor* should "constitute an additional lien on such land, to the amount therein specified and the interest thereon; and the amount so paid and the interest thereon" should "be collectible with, as part of, and in the same manner as, the amount secured by the original lien." Sec. 116, ch. 15, R. S. 1849; sec. 161, ch. 18, R. S. 1858. By ch. 123, Laws of 1860, the statute upon the subject was modified so as to read substantially as found in the revisions of 1878 and 1898, secs. 1158, 1160. It will be observed that the original statute only constituted the receipt for taxes "paid" by such mortgagee "an additional lien," etc. The amended statute gave a "further lien," not only for taxes paid, but also for money paid to redeem the mortgaged premises from tax sales. The manifest purpose of the first of these sections was to secure to such original lienholder the repayment of any money he might voluntarily expend in paying any taxes on such real estate, and also any money he might voluntarily pay to redeem such real estate from tax sales, with interest upon the amounts so expended and paid, as prescribed, and giving him a lien therefor upon the land, as stated. In the absence of such statute, such original lienholder might not have been able to recover back the money so *voluntarily* paid and expended, especially in the absence of any agreement to that effect in the mortgage or instrument creating the original lien. The manifest purpose of the other section was to prevent the original lien from being "discharged as to the persons mentioned in sec. 1158 until the money thus paid for taxes, charges, interest, or redemption, with interest thereon as aforesaid," should first be "repaid," and to authorize such original lienholder to recover the amount so paid and expended, and the interest thereon, in any judgment obtained by him to enforce his original lien. It will be observed that neither of these sections mentions tax certificates purchased or obtained by any

such original lienholder, nor tax deeds taken thereon by such original lienholder. The rights of the mortgagee, as the purchaser and holder of such tax certificates, are by the statutes to be determined by equitable principles as at common law. In New York it has been held that, "In the absence of any special covenant to that effect, a mortgage imposes no duty upon the mortgagee to protect the interests of the mortgagor, and the former is not prohibited from acquiring an adverse claim to or lien upon the mortgaged premises, and from enforcing it with the same effect as a stranger might." *Cornell v. Woodruff*, 77 N. Y. 203, 205, 206. That case followed *Williams v. Townsend*, 31 N. Y. 411. This last case seems to have been expressly approved by Chief Justice Dixon in *Sturdevant v. Mather*, 20 Wis. 585, 586, but it was not essential to the decision of that case. In the same volume it was held that: "Where a second mortgagee of land purchases on foreclosure of his mortgage, he cannot acquire *an absolute title, free from the lien of the first mortgage*, through an assignment to him of an outstanding tax certificate, and a deed issued thereupon. . . . Such assignment (whether made before or after the foreclosure sale) must be regarded, *prima facie*, merely as a redemption of the land from the tax sale." *Smith v. Lewis*, 20 Wis. 350. To the same effect, *Fisk v. Brunette*, 30 Wis. 102; *Lybrand v. Haney*, 31 Wis. 230. These decisions are based upon the general principles of equity, and are in no sense governed by the statute. The general rule is that the mortgagee is protected, in equity, in the payment of taxes and assessments upon the mortgaged premises. 2 Jones, Mortgages, § 1080.

Counsel for the plaintiff seemingly rely upon a Michigan case, where the mortgagees, after having redeemed the mortgaged premises from a tax sale, foreclosed their mortgage, and bid in the land for the amount due on their mortgage, without any reference to what they had paid to redeem the

land from the tax sale. Thereupon the mortgagor redeemed from the foreclosure sale, and thereafter such mortgagees filed a bill in equity to enforce a claim against the land for what they had so paid to redeem the land from the tax sale. In refusing the relief prayed for, Mr. Justice COOLEY, in behalf of the court, said: "All that complainants could claim by virtue of the mortgage they were bound to claim in those proceedings, and they could not, at pleasure, *split up their demand,* and make the parts the subjects of separate suits." *Vincent v. Moore,* 51 Mich. 619. That decision was not based upon any statute, but upon a well-recognized principle of the common law. The same is true of the Missouri case relied upon,— *Horrigan v. Wellmuth,* 77 Mo. 542, 545, 546. While it was there held that the claim of the mortgagee who had paid taxes "must be enforced as a part of the mortgage debt, and not by an independent action against the mortgagor as for money paid to his use, or under claim of subrogation to the lien of the state or municipality," yet it was there further held that "payment of the debt secured by a mortgage will not extinguish the lien of the mortgage as a security for taxes properly paid by the mortgagee." The court said: "It appears that the amount of the mortgage debt was paid to the plaintiff by the defendants on December 19, 1877, but it does not appear that any release has ever been executed, or that any entry of satisfaction has ever been made; and we think it quite clear that, as the mortgagee was entitled to receive the original debt, interest, and taxes before the defendants could demand an entry of satisfaction or a release, the simple payment of the debt and interest, without more, would no more extinguish the mortgage than the payment of the debt and taxes, without the interest, would extinguish it.

Where a person having a lien or interest in or title to land acquires a tax certificate or other lien upon the same land, and justice and good conscience require it, it is the

business of a court of equity to preserve such lien and prevent its merger into the higher title or interest. *Webb v. Meloy*, 32 Wis. 319; *Morgan v. Hammett*, 34 Wis. 514, 524; *Aiken v. M. & St. P. R. Co.* 37 Wis. 469; *Scott v. Webster*, 44 Wis. 185; *Gilchrist v. Foxen*, 95 Wis. 428, 440.

For the reasons given I think the judgment of the superior court of Douglas county should be affirmed.