Swope v. Jordan.

SWOPE v. JORDAN.

(*Jackson.*    May 24, 1891.)

1. TAX TITLE.  *Void, when.*

Under the facts stated in the opinion the Court holds that complainant acquired no title to the lands involved by his purchase thereof at a tax sale.  (*Post, pp. 169–171.*)

2. ESTOPPEL.  *By recitals in deed or mortgage.*

Recital in a mortgage of the existence of a former unpaid mortgage on the same property, estops the parties to the later mortgage and those claiming under them, to deny the legality and priority of the earlier mortgage.  (*Post, pp. 172, 173.*)

Cases cited and approved: Coal Creek Mining Co. *v.* Heck, 15 Lea, 497; McRoberts *v.* Copeland, 85 Tenn., 211; Caraway *v.* Caraway, 7 Cold., 245; Rankin *v.* Warner, 2 Lea, 302.

3. CORPORATIONS.  *Constitutionality of Acts 1895 reaffirmed.*

Constitutionality of Acts 1895, Ch. 119, validating contracts of foreign corporations made before registration of charter and abstracts thereof, reaffirmed.  (*Post, pp. 177–179.*)

Acts construed: Acts 1895, Ch. 119.

Case cited and approved: Butler *v.* B. & L. Asso., 97 Tenn., 679.

4. SAME.  *Same.*

But said Act can have operation and effect, within constitutional limitations only between the original parties, or those claiming under them, without superior equities.  It cannot operate to divest the vested rights of innocent third persons.  (*Post, pp. 179–183.*)

Case cited: Shields *v.* Clifton Hill Land Co., 94 Tenn., 123.

5. INNOCENT PURCHASER.  *Who is not.*

The holder of notes secured by mortgage, who took them in payment of a pre-existing debt, and with notice that the mortgage securing them recognized on its face a pre-existing unpaid mortgage on the same property, is not such innocent

purchaser, and does not occupy such position that he may set up the defense that the former mortgage was void because made to a foreign corporation that had not complied with the statute requiring registration of its charter    (*Post, pp. 169–177, 182, 183.*)

6. BUILDING AND LOAN ASSOCIATIONS.    *Accounting with borrowing stockholder.*

Where a building and loan association declares forfeiture against its defaulting borrowing stockholder, and subsequently, becomes insolvent itself, the account between the company and such stockholder should be stated, in winding up its affairs, as of date of the forfeiture, and as between a going, not an insolvent, concern and such stockholder. (*Post, pp. 183, 184.*)

Cases cited: Rogers v. Hargo, 92 Tenn., 35; Post v. B. & L. Asso., 97 Tenn., 408; Carpenter v. Richardson, 101 Tenn.. 176; Carpenter v. Frazier, 102 Tenn., 462.

---

FROM SHELBY.

---

Appeal in error from Chancery Court of Shelby County, F. H. HEISKELL, Ch.

ST. JOHN WADDELL, W. W. GOODWIN and J. M. STEEN for Swope.

MYERS & BANKS and PRESCOTT & FARMER for Jordan.

WILKES, J.    October 1, 1889, M. M. Gilchrist subscribed for twelve shares of stock in the Interstate Building and Loan Association of Bloomington, Illinois, each share being for one hundred dollars.    June

1, 1889, he borrowed from the Association $1,200, and secured the same by mortgage on real estate, the amount to be paid, under the rules and by-laws of the Association, in monthly installments. The Association paid over the entire sum of $1,200, and the premium bid was to be paid in monthly installments. May 25, 1892, Gilchrist and wife conveyed the property to Robert Thompson, by deed, for the consideration of $2,500 ; $20 of the amount was paid in cash, and for the remainder one hundred and eleven notes were executed, payable monthly. A mortgage back to Butler Jack, trustee, was executed by Thompson and wife, with power of sale in default of payment of the purchase money.

The deed or instrument contains this clause : "That the same (premises) are free from all incumbrances except a trust deed to the Interstate Building & Loan Association of Bloomington, Illinois, which M. M. Gilchrist assumes to pay." This is signed by Gilchrist and wife and Thompson and wife.

On July 11, 1894, Gilchrist assigned to W. C. Swope, before their maturity, the purchase money notes for the lots, in satisfaction of a debt he had been compelled to pay for him as endorser. Gilchrist having defaulted on payment of his dues to the Association, his stock was declared forfeited, and Jordan, its trustee, advertised to sell the lots under the trust deed. Complainant enjoined the sale, which injunction continued in force until final decree in this cause.

Swope *v.* Jordan.

There was a demurrer to the bill, which was overruled with leave to rely on the same in the answer, which was done. January 28, 1897, a decree was entered appointing a receiver.

June 1, 1898, the Association having become insolvent, was placed in the hands of a receiver by a court in Illinois.

On June 21, 1898, a general creditors' bill was filed in the Chancery Court at Memphis against the Association and was sustained. The Association was adjudged insolvent, and Edward Barry was appointed receiver, being the same person theretofore appointed in the suit in Illinois. He filed an answer and cross bill in this cause, and prayed for a foreclosure of the mortgage to the Association, claiming as due, under the rules and by-laws, up to January 1, 1897, the sum of $1,440.50.

Pending the suit, and injunction which Swope had sued out on September 24, 1896, he, Swope, purchased the lots at tax sale, from a back-tax attorney, and claims, under this tax sale, a title paramount.

The trustee of Shelby County sold the property, presumably, for the taxes of 1896 also, and reported the same to the Clerk of the Circuit Court. On September 13, 1899, the receiver redeemed the property from this sale, and took deed and certificate therefor and set up these facts by cross bill.

The cause was heard on the entire record March 29, 1891, and the Chancellor decreed that the trust

deed of Gilchrist and wife to the trustee of the Association was prior in date and equity to the trust deed of Robt. Thompson and wife to Butler Jack, trustee, of date May 25, 1892, and decreed the foreclosure of said deed of June 1, 1891, subordinating to it any lien in the said deed of May 25, 1892, and decreeing a sale of the property and subjecting the funds in the hands of the receiver, and the proceeds of the Gilchrist stock in the said Association to the payment of any indebtedness found due thereon, and referred the cause to the Clerk and Master to take an account of said indebtedness to be taken, according to the rule laid down by this Court in *Rogers* v. *Hargo*, and other cases. From which decree the complainant has appealed to this Court and assigned errors.

I. The first assignment of error by appellant W. C. Swope is that the Court erred in refusing relief to him under his supplemental bill, because of his so-called tax purchase of the property in litigation, from A. J. Harris, back tax attorney. In regard to this, the facts are as follows, in addition to what has already been stated:

The back tax attorney deed to Swope was executed Nov. 18, 1898. It is quite meagre and informal. It does not show the year for which the taxes were delinquent and property was sold. It does not show the amount of taxes nor the penalty nor interest, nor whether the sale was public or private. Swope, the purchaser, was holding under

Gilchrist's assignment of the notes to him for a pre-existing debt, and had full knowledge of the priority of the Association mortgage on the property, and of Gilchrist's stipulation to pay the dues to the Association, and his implied and express duty and stipulation in the trust deed to the Association to. keep down the taxes. He procured the sale of the property to be enjoined for defaults in these payments, and during the pendency of that injunction bought the property at the tax sale. If it was not the direct duty of Swope, the assignee of the notes and mortgage, to keep down the taxes, he would not be allowed to invoke the injunctive power of the Court to hold off defendants with the one hand, and on the other hand buy in property at tax sale and claim the same by paramount title. It does not clearly appear whether the sale made by the County Trustee was for the same taxes as those for which the back tax attorney made sale, but the inference is that it was. Barry, the receiver, redeemed this sale, and set up the rights acquired thereunder by crossbill. We do not think complainant can take anything under this tax purchase.

The second error assigned is to the decree of the Court in holding that the Trust Deed from M. M. Gilchrist and wife to B. M. Stratton, trustee, of date June 1, 1891, to secure the Interstate Building & Loan Association, of Bloomington, Illinois, in the payment of $1,200 borrowed money, was entitled to priority of satisfaction of payment over the deed of

Robt. Thompson and wife to Butler Jack, trustee, to secure M. M. Gilchrist in the payment of three notes secured by exhibit B. in bill.

The third assignment of error by complainant is to the decree of the Chancellor ''in declaring a charge upon the lots of land in favor of the Interstate Building & Loan Association under the Trust Deed executed by Gilchrist and wife to B. M. Stratton, trustee, over the title of Robt. Thompson, and the notes executed by him to M. M. Gilchrist, and secured by trust deed of Thompson to Butler Jack, trustee, which last named notes are now held by complainant, Swope.'' The above two assignments cover practically the same proposition, and, for convenience, we consider them together.

The deed and mortgage between Gilchrist and Thompson contains the clause before recited: ''That the same (premises) are free from all encumbrances, except a trust deed to the Interstate Building & Loan Association of Bloomington, Illinois, which M. M. Gilchrist assumes to pay.'' This must operate as an estoppel upon Thompson and Swope, the assignee, to question the legality and priority of the mortgage to the Association. They are both affected with notice and cannot claim except in subordination to that mortgage, as neither occupies the status of an innocent purchaser. 1 Jones on Mortgages, Secs. 735–736 (5th Ed.), and notes, Sec. 544, p. 695 ; 2 Pomeroy's Eq., Sec. 937, p. 453; 3 Pomeroy's Eq., Sec. 1205, notes; *Johnson* v. *Thompson*, 129

Mass., p. 398; *Canfield* v. *Sheon*, 49 Mich., 313–315 Am. and Eng. Enc. of Law, p. 835; *Coal Creek Mining Co.* v. *Heck*, 15 Lea., 497, 506, 515; *McRoberts* v. *Copeland*, 1 Pickle, 211; *Caraway* v. *Caraway*, 7 Cold., 245; *Rankin* v. *Warner*, 2 Lea, 302–305; *Kilpatrick* v. *Haley*, 66 Fed. Rep., pp. 133, 135, 136.

In Jones on Mortgages, *Supra*, Sec. 736, the author says: "When one purchases land expressly subject to a mortgage, the land conveyed is as effectually charged with the encumbrance of the mortgage debt as if the purchaser had expressly assumed to secure it. The conveyance of land subject to a mortgage operates to give priority to the mortgage, against the purchaser, and those claiming liens under judgments subsequently rendered. The amount of the existing mortgage having been deducted from the purchase money of the incumbered property, the grantee, in effect, undertakes to pay the amount of the purchase money, represented by the mortgage, to the holder of it, and he is as effectually estopped to deny its validity as he would be had he, in the premises, agreed to pay such mortgage. The difference between the purchaser's assuming the payment of the mortgage and simply buying subject to the mortgage, is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other case he does not assume such liability. In both cases he takes the land charged with the payment of the

debt, but he is not allowed to set up any defense to its validity, as, for instance, that the mortgage is void wholly, or in part, on account of usury."

In 2 Pomeroy's Equity, Sec. 937, *supra*, in regard to this proposition, the author says: "For the same reason the subsequent mortgagee and encumbrancer cannot defeat the prior encumbrance or procure it to be set aside upon an allegation of its usurious character."

In 3 Pomeroy's Equity, Sec. 1205, *supra*, on the point under consideration the author says: "Where the mortgagor conveys by deed absolutely silent with respect to the outstanding mortgage, the grantee, of course, takes the land encumbered by the mortgage, if he has actual notice of it, or constructive notice by record or otherwise. Where the mortgagor conveys by a deed which states simply that the conveyance is subject to a certain specified mortgage, or words to that effect, the grantee takes the land burdened with the lien."

The case of *Johnson* v. *Thompson*, 129 Mass., *supra*, is a well considered case, and also directly in point in its facts, in which the Court says: "It is a settled principle of law that the grantee is estopped to deny the validity of any mortgage to which his deed recites that the conveyance to him is subject." Citing various authorities.

The case of *Canfield* v. *Sheom*, 49 Mich., 313, *supra*, is a well reasoned case and also directly in point, upon the question under consideration; the

syllabus is as follows: "Where the purchaser buys mortgaged premises from the mortgagor subject to the mortgage; and his deed is expressly made subject to it, though it does not in terms bind him to pay it, he is to be treated, as between himself and the mortgagor, as having assumed the mortgage, and and is personally liable for whatever deficiencies there may be after foreclosure sale." *Sweetser* v. *Jones*, 35 Vermont, supra (82 Am. Dec., p. 639), is a well reasoned case, and fully sustains the text writers upon this point.

The same doctrine prevails in Tennessee. In *Coal Creek Mining Co.* v. *Heck*, 15 Lea, *supra*, the estoppel was enforced although the grantees did not sign the deed (in case at bar the instrument was signed by both grantees and grantors). In the Coal Creek case the Court held that the Coal Creek Mining Co. "in accepting the deed with the reservations in it, estopped all these parties from asserting any adverse title," and that the effect of the exception or reservation under this view is held by all the authors to be that the same consequence attached to such acceptance as would have attached had it been a grant, although the Coal Creek Mining Co., the grantee, had not signed the conveyance.

In *Caraway* v. *Caraway*, 7 Cold., pp. 248–250, *supra*, the Court held, "that Caraway and wife, the grantees, although they did not sign the deed, were bound by its stipulations and reservations to the

same extent as though they had signed it, having accepted the same with the reservations therein.''

In *McRoberts* v. *Copeland*, 1 Pickle, 211, *supra*, the same question came under consideration of this Court, where the grantees had not signed the instrument, the ''habendum'' of the deed in that case is in these words: '' To have and to hold the above described property, to the same, Didama and Victoria McRoberts, their heirs and assignees forever, subject alone to our life estate and at our death the title to vest in fee simple in the said Didama and Victoria, their heirs and assigns.'' And the Court says: ''The exception or reservation in the deed operates as a conveyance of the land to his widow for life.''

In *Rankin* v. *Warner*, 2 Lea, 301, *supra*, the deed recited that one of the heirs was insane, and the grantees only took such title as the other heirs were able to convey, and the Court, as to this, held that the grantees in said deed, by accepting the same, were estopped, and used the following language: '' They are estopped by this recital; by it the insanity is shown to exist; it continues to exist in contemplation of law until the contrary is shown, with the burden of so showing resting upon the plaintiffs in error.''

In the case at bar the reservation is in the face of the deed as to the mortgage of the Interstate Building & Loan Association, etc. That debt having been shown in the instrument to exist, it is

presumed to continue until clearly shown that it has been paid off. Robert Thompson and complainant (Swope) hold under that deed, and are estopped to deny the validity of it.

The case of *Kilpatrick* v. *Haley*; 66 Fed. Rep., p. 133, *supra*, is a very full and instructive one, and is by the Circuit Court of Appeals of the Eighth Circuit. The opinion is delivered by Thayer, J., and a voluminous review of authorities is contained therein, and the doctrine of estoppel, as herein invoked, is fully recognized.

It is said that complainant (Swope) is entitled to recover as against the mortgage of Gilchrist to B. M. Stratton, trustee, of June 1, 1891, because, at the date of the execution of said mortgage, the Loan Association had not complied with the Act of 1891, in filing its charter with the Secretary of State, and causing an abstract thereof to be registered in Shelby County, and that before said charter and abstract was filed (August, 1894), W. C. Swope had taken an assignment of the notes executed by Robert Thompson to M. M. Gilchrist, secured by the mortgage, or trust deed, of May 25, 1892, executed by Thompson and wife, and, therefore, as to this transaction, Swope had a vested right, by reason of his purchase before the validating Act of May 10, 1895, and, therefore, said validating Act was retrospective, and could not interfere with his rights under the Thompson mortgage.

23 P—12

Section 1, of the Acts of 1895, chapter 119, is as follows:

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That the contracts of any foreign corporation, created or organized by any State or government other than that of this State, that has heretofore engaged in business, made contracts, or purchased property in this State, after the passage of said chapters 95 and 122, of the Acts of 1891, without first complying with the provisions of the same, shall be as valid and binding in all respects as if a copy of its. charter had been filed with the Secretary of State and an abstract of the same filed in each County where such corporation carried on business or made contracts: *Provided,* That this section shall apply only to such foreign corporations as have already in good faith complied with the provisions of said chapters 95 and 122 of the Acts of 1891, and chapter 31 of the Acts of 1877, by filing a copy of its charter with the Secretary of State, and recording abstracts thereof in each County in which said corporation carried on business or made contracts, or shall, within four months after the passage of this Act, so file such charter and abstract of same: *Provided,* However, that no mortgage or deed of trust executed to a foreign corporation upon real estate in this State, where such foreign corporation had not complied with the laws of this State at the time of such mortgage or deed of trust was executed, shall be foreclosed, either

under a power of sale or judicial decree, until two years after the passage of this Act, but no alien corporation owning land in the State shall have the benefit of this stay of foreclosure proceedings.''

By Section 2 of said Act it is provided that not more than six per cent. interest on the amount actually received by the parties shall be collected. The record shows that in August, 1894, prior to said validating act, the Interstate Building & Loan Association had complied with the law.

In the case of *Butler* v. *United States Building & Loan Association*, 13 Pick., 679, this Court declared this Act of the Legislature constitutional and valid, and that it did not impair the obligation of contracts, but sustained them. In the opinion of the Court in said cause, the case of *Gross* v. *United States Mortgage Co.*, 108 U. S., p. 447, is referred to, in which the identical question presented in the case at bar was presented, in which the insurance company purchased under much the same conditions as Swope and Thompson did here, and the Court decided against its contention. See also *Ewell* v. *Daggs*, 108 U. S., 143. The case of *Shields* v. *Clifton Hill Land Co.*, 10 Pick., 123, is also cited and relied on. The doctrine there laid down may be generally stated as follows: ''While no retrospective law or laws impairing the obligation of contracts may be made (Const. Tenn. Act 1, Sec. 20), still remedial legislation is not prohibited, and the constitutional provision does not stand in the way

of statutes passed to cover defects or omissions
in former enactments, or in the case of parties at-
tempting to comply therewith. The general expres-
sion of the principle is that no one has a vested
right in any remedy, and, we might add, nor in
any want of remedy or in any policy of the State
for the time being.

The acts of foreign corporations which have not
complied with law are said to be illegal, invalid
and unenforcible, and, in some cases, the expression
is used that they are void. All these expressions
mean the same thing that the contracts are illegal
and invalid and unenforcible to the extent that the
State will not lend its aid to their enforcement, and
no right of action can be based thereon, but the
legislature may, if it see proper, and upon such
terms as it deems best, and proper, validate such
contracts and allow them to be enforced. But while
this principle is well established, it only applies as
between parties to the contract which has been val-
idated and made enforcible. It cannot be given ef-
fect retroactively so as to divest the vested rights
of innocent third persons. 6 Am. and Eng. Encyc.
Law (2d ed.), 940, note 1, citing *Sidway* v. *Law-
son,* 58 Ark., 124, 956, note 4; *Smith* v. *Scar-
borough,* 61 Ark., 104; *Shattuch* v. *Byford,* 62 Ark.,
431; *Barrett* v. *Barrett,* 120 N. C., 127; *Mughen*
v. *Strong,* 80 Am. Dec., 441; *Brinton* v. *Seevers,*
12 Iowa, 389; *Thompson* v. *Morgan,* 6 Minn., 292;
1 Am. and Eng. Encyc. Law 2d ed.), 568, note 1,

*Newman* v. *Samuels*, 17 Iowa, 528 ; *Grove* v. *Todd*, 41 . Md., 633.

Mr. Cooley thus lays down the rule: "The operation of these cases (cases upholding curative statutes), however, must be carefully restricted to the parties to the original contract and to such other persons as may have succeeded to their rights with no greater equities. A subsequent *bona fide* purchaser cannot be deprived of the property which he has acquired by an act, which retrospectively deprives his grantor of the title which he had when the purchase was made. Conceding that the invalid deed may be made good as between the parties, yet if, while it remained invalid, and the grantor still retained the legal title to the land, a third person has purchased and received a conveyance, with no notice of any fact which should preclude his acquiring an equitable as well as a legal title thereby, it would not be in the power of the legislature to so confirm the original deed as to divest him of the title he has acquired. The position of the case is altogether changed by this purchase. The legal title is no longer separated from equities, but in the hands of the second purchaser is united with an equity as strong as that which exists in favor of him who purchased first. Under such circumstances even Courts of Equity must recognize the right of the second purchaser as best and entitled to the protection which the law accords to vested interests. Cooleys Const. Limitations, star p. 379. The cases

in our own books cited above ˹of: *Bulter* v. *Loan Association*, 13 Pickle, 579; *Shields* v. *Clifton Hill Co.*, 10 Pickle, 152, ˙ as well as the cases of: *Gross* v. *United States Mort. Co.*, 108 U. S., 488; *Ewell* v. *Daggs*, 108 U. S., 143, all recognize the law as being that vested rights cannot be defeated by validating acts, but they were all except *Gross* v. *U. S.*, cases where the controversy was · between the original parties and the rights of the third persons had not intervened.

In the case of *Gross* v. *U. S. Mort. Co.*, *supra*, the third person (the insurance company) was affected by the validating Act, because it had obligated itself to pay the debt, and Gross, the assignee of the note, was held to be affected by this obligation, and thus placed in such relationship with the original parties as that the validating Act applied to him.                                    .

Now, in the present case, we may treat the contract between Gilchrist and the Association as unenforcible until the validating Act was passed. While thus unenforcible, Gilchrist sold to Thompson, and in the deed to him recited the mortgage to the Association. ˙ He transferred the purchase money notes to Swope, in payment of an amount due him. The question is: Are Thompson, the purchaser of the lots, and Swope, the assignee of the purchase money notes, affected by the validating Act? They each knew of the mortgage to the Association, and neither can be held to be strictly innocent pur-

chasers, because in the conveyance made by Gilchrist to Thompson that mortgage and debt is recognized as resting upon the lots. Thompson did not, however, assume personally to pay that debt, as the insurance company did in the Gross case. Swope stands still one remove further than Thompson, since he took the notes by indorsement from Gilchrist, but his condition is, perhaps, no better, unless he can be treated as an innocent purchaser. He appears in the Record to be a *bona fide* purchaser, but he had notice of the encumbrance upon the lots, and the contention is that he bought with knowledge that such encumbrance was not valid and could not be enforced. He took the notes, however, in payment of a pre-existing debt, and with notice of the mortgage, to the Association, and can, therefore, occupy no higher ground than Gilchrist, from whom he obtained the notes.

The fourth error assigned is to the action of the Court in the direction as to the account to be taken between the Association and borrower. The general rule for such accounts in cases of insolvency is stated in a number of cases. *Rogers* v. *Hargo*, 8 Pick., 35; *Post* v. *B. & L. Association*, 13 Pick., 408; *Carpenter* v. *Richardson*, 17 Pick., 176; *Carpenter* v. *Frayser*, 18 Pick., 462. While this is the rule to be applied in all cases of insolvency, the important question is when or at what date should the account be struck. Gilchrist defaulted in his obligations to the company in June, 1895, and his

rights as stockholder and borrower were declared for-feited at that date.     The Association was then a go-ing concern and presumably solvent.     It afterwards became insolvent.

We are of opinion that the account between Mr. Gilchrist and the Association should be made up and stated as of the date when his rights were declared forfeited, and upon the basis of a solvent, going cor-poration, and that the Association, after making such declaration, could not hold the stock until the com-pany became insolvent, and make up the account as upon a final distribution of an insolvent association. The rights and liabilities of Gilchrist to the com-pany were fixed when he ceased to be a member and when the Association declared his rights for-feited.     As to this feature, therefore, the decree of the Court below is modified, and in all other re-spects it is affirmed.

The costs of the appeal will be equally divided between Swope and the Association.     The costs of the Court below will remain as adjudged by that Court.