[No. 27126. Department One. December 27, 1938.]

THE OREGON MORTGAGE COMPANY, LIMITED, *Respondent*, v. LEAVENWORTH SECURITIES CORPORATION, *Appellant*.[1]

*A. N. Corbin*, for appellant.

*Sam R. Sumner* and *Harvey F. Davis*, for respondent.

[1]Reported in 86 P. (2d) 206.

BLAKE, J.—This is an appeal from a decree foreclosing a mortgage on an orchard tract situated in Chelan county. The sole question for determination is whether the appellant, Leavenworth Securities Corporation, can set up as against the mortgagee, respondent here, a tax title acquired subsequent to the execution of the mortgage.

The salient facts are: May 20, 1922, one Gilbert executed and delivered a mortgage to respondent, to secure a loan of eighteen hundred dollars. Subsequently, he executed and delivered a mortgage on the same property to Leavenworth State Bank, one of the defendants in the action.

At all times with which we are concerned, Robert B. Field was president of the bank and owned a majority of its stock. Likewise, he owned a majority of the stock of the appellant, Leavenworth Securities Corporation, of which he was vice-president. He was the actual manager of the bank. Although nominally another managed the appellant corporation, we think it is clear that Field was also the dominating power in its management. Both institutions occupied the same offices.

Prior to 1933, the bank had been financing Gilbert in the operation of his orchard. In January of that year, Field, ostensibly for Leavenworth Securities Corporation, purchased the property at tax sale for $143.10—the amount of the irrigation assessment for 1932. December 29, 1933, Field, on stationery of Leavenworth State Bank, and over his signature as "President," wrote respondent's attorney as follows:

"You will remember last summer discussing with me the taxes on the A. C. Gilbert place. Also you will recall that Mr. Pattullo [manager of respondent] was with us when I made the statement that I had purchased the water taxes on this tract and hoped to obtain a deed from the District on January 8th.

"Please take this matter up immediately with Mr. Pattullo, with the idea of drawing some sort of a document which will give Mr. Pattullo the same benefits he now has, as far as this land is concerned, after deed has been issued to us.

"My reason for writing you at this time is to go on record to the effect that we haven't the slightest intention of taking advantage of the Oregon Mortgage Co. in this situation, and all we want them to do, is to agree to reimburse us for these taxes at a later date if it becomes necessary for them to foreclose on this particular property. My purpose in buying up these taxes was to avoid a foreclosure, as one is very imminent, and I sincerely trust that the Oregon people will go along with us in the hope that we can work out the proposition and thus avoid the necessity of their taking over the tract."

January 12, 1934, the treasurer of Chelan county executed and delivered a tax deed to "R. B. Field for Leavenworth Securities Corporation."

Field again wrote respondent's attorney on April 18, 1934. This letter was also on the bank's stationery, and signed "Robert B. Field, Pres." In this letter, after summing up Gilbert's obligations to respondent and the bank, Field outlined a plan by which he hoped that Gilbert's indebtedness to both respondent and the bank might be worked out without liquidating the property. The proposal included the following condition:

"In case of liquidation through failure to operate successfully bank's advances to come first, after which the balance would be split fifty-fifty between the mortgage company and the bank to apply on our present investments in this property."

In other words, it was proposed that the lien of the bank should be on an equality with respondent's mortgage with respect to the net proceeds from the sale of the property. Neither respondent nor its attorney

made any written response to this proposal. But that the matter was discussed many times with Field, there can be no doubt. Nothing came of the discussions, however, for the respondent was unwilling, in case of liquidation, to divide the net proceeds, and Field would not modify his proposal in this respect.

The status of the parties with respect to their rights of recourse to the property thereafter remained unchanged, until March, 1938, when respondent instituted this action to foreclose its mortgage. As we have seen, appellant then claimed a paramount title through the tax deed. In its decree, the trial court specifically found:

"That at and prior to the time said deed was issued and for many years prior thereto the defendant, Leavenworth State Bank was the holder of a mortgage on the property involved in this action which was secondary to the mortgage held by plaintiff; that in securing said tax deed the said R. B. Fields and, or Leavenworth Securities Corporation, were in truth and in fact acting as agent for and in behalf of Leavenworth State Bank for the protection of the lien held by Leavenworth State Bank."

Although Field testified that the bank had abandoned its mortgage prior to the time appellant acquired the tax deed, we do not think the above finding of fact debatable, in the light of the evidence.

Nor do we think there can be any doubt about the rule of law applicable. According to the text writers, the rule is universal that one interested in land with others, all deriving their interest from a common source, cannot assert an absolute title to the land through a tax deed, to the injury of such others. 2 Jones on Mortgages (8th ed.), § 841; 3 Cooley on Taxation (4th ed.), § 1437. This court has applied the rule in at least two cases, as between a mortgagor and mortgagee. *Shepard v. Vincent*, 38 Wash. 493, 80 Pac.

777; *Maher v. Potter,* 60 Wash. 443, 111 Pac. 453. In those cases, it was held that a mortgagee could not assert a subsequently acquired tax title against the mortgagor.

The corollary rule is equally well established that a junior mortgagee cannot assert a tax title against a senior mortgagee. 19 R. C. L. 398; *Fair v. Brown,* 40 Iowa 209; *Garrettson v. Scofield,* 44 Iowa 35; *Woodbury v. Swan,* 59 N. H. 22; *Smith v. Lewis,* 20 Wis. 369; *Middletown Sav. Bank v. Bacharach,* 46 Conn. 513.

But appellant says that the issue presented here amounts to an action to set aside a tax deed, and, not having been brought within three years, is barred by the statute of limitations. Rem. Rev. Stat., § 162 [P. C. § 8167]. This objection was effectively disposed of in *Maher v. Potter, supra,* where it was held that the statute of limitations for actions to set aside a tax deed is not applicable to such cases as this. This holding follows of necessity upon the theory underlying the rule as expounded in the cases we have cited—as against the senior mortgagee, the junior mortgagee holding a tax deed does not have a title, but merely a lien, enforcible under his mortgage. His tax deed puts him in no better position than would a tax receipt.

Judgment affirmed.

STEINERT, C. J., MAIN, BEALS, and ROBINSON, JJ., concur.