**Charles C. MOORE, Plaintiff in Error,**

v.

**Effie D. CRISP, Willice A. Crisp, Jr. and Jerry Crisp, Defendants in Error.**

**No. 39645.**

Supreme Court of Oklahoma.

April 23, 1963.

Rehearing Denied July 2, 1963.

Claude E. Love, Oklahoma City, for plaintiff in error.

John B. Ogden, Oklahoma City, for defendants in error.

WELCH, Justice.

The parties will be referred to by name or by their trial court designation.

The plaintiff alleges he is the owner and holder of a first mortgage, executed by Willice A. Crisp, covering certain real property in Oklahoma City. That Effie D. Crisp, Willice A. Crisp's mother, is the holder of a second mortgage executed by Willice A. Crisp covering the identical property; that Willice A. Crisp failed to pay the taxes thereon and at tax sale the same was sold and certificates issued which certificates were afterwards assigned to Effie D. Crisp. The tax certificates were subsequently surrendered and a tax deed was issued by the County Treasurer. Plaintiff prays for cancellation of the tax deed, alleging that Effie D. Crisp and Willice A. Crisp had fraudulently conspired to obtain the tax deed. Plaintiff also claimed or contended that the defendant holding a second mortgage could not obtain a valid tax title.

The evidence shows that Willice A. Crisp died during the pendency of the action and the same was revived in the names of his heirs, Willice A. Crisp, Jr., and Jerry Crisp. All of the transactions here involved occurred some years before Mr. Crisp died. On April 23, 1954, Crisp executed and delivered a first mortgage to Moore covering the property, and the mortgage was duly filed and recorded; thereafter Crisp executed and delivered a second mortgage covering the identical premises to his mother Effie D. Crisp, and which mortgage was also filed and recorded. Taxes became delinquent and on the sale, tax certificates were duly issued and the same were subsequently assigned to Effie D. Crisp. On December 9, 1958, tax deeds were issued by the County Treasurer to Effie D. Crisp and under which she claims title and which Moore seeks to cancel.

While Moore argues two propositions, we will only discuss the contention that the holder of a junior mortgage cannot purchase the property at a tax sale and thereby acquire title as against a prior mortgage.

The precise question involved herein has never been presented to this court. As between mortgagee and mortgagor we have held the mortgagee may purchase the mortgaged property at tax sale and acquire title as against the mortgagor. See Jones v. Black, 18 Okl. 344, 88 P. 1052, 90 P. 422; Price v. Salisbury, 41 Okl. 416, 138 P. 1024, L.R.A.1917D, 520; Owens v. Williams, 180 Okl. 324, 68 P.2d 836; Stith v. Gidney, 193 Okl. 175, 141 P.2d 1003. However, a different rule applies as between the holder of a first mortgage and subsequent mortgages.

In 37 Am.Jur. Sec. 1165, p. 417, the following rule is stated:

"The general rule is that the holder of a junior mortgage cannot purchase the mortgaged property at a tax sale and thereby acquire title as against a prior mortgagee. Where he does buy, his purchase is deemed to have been made by him as an interested party for the protection of the estate. In support of this rule, it has been declared that since the junior mortgagee has the right to pay the taxes for the protection of his security, it would be inequitable to permit him to acquire title by purchasing the property for the delinquent taxes, and thereby defeat the lien of the senior mortgagee. * * *"

In 140 A.L.R. 322, the author states:

"The weight of authority is to the effect that a junior mortgagee cannot cut off the rights of a senior mortgagee by purchasing the mortgaged property at a tax sale. * * * [Smith v. Lewis] 20 Wis. 350; [Avery v. Judd] 21 Wis. 262; [Fair v. Brown] 40 Iowa 209; [Porter v. Lafferty] 33 Iowa 254; [Stears v. Hollenbeck] 38 Iowa 550; Jones on Mortgages, 680."

Supporting the above general rule, the Supreme Court of Washington, in the case of The Oregon Mortgage Co., Limited v. Leavenworth Securities Corporation, 197 Wash. 436, 86 P.2d 206, held:

"As against the senior mortgagee, junior mortgagee holding a tax deed does not have title but merely a lien enforceable under his mortgage, and his deed puts him in no better position than would a tax receipt."

In the early case of Gorton v. Paine, 18 Fla. 117, the Supreme Court of Florida held that a second mortgagee cannot set up a tax title as against a prior mortgagee, since between a first and second mortgagee of land, equity regards the land as a common fund for the payment of both liens, and it is an act of fraud for a second mortgagee to acquire by tax sale a title to the land and use it to destroy the claim of the prior mortgagee.

The later Florida case of Kane v. Eustis, 106 Fla. 817, 143 So. 655, also followed this rule.

In each of the above cases the reasoning of the court was that the land was a trust for the payment of the mortgage liens and neither party could take advantage of the other in exhausting or putting beyond the reach of the other the land or the proceeds of the land by taking a tax deed thereto.

In 59 C.J.S. Mortgages § 326, p. 446, a different reasoning is set out as to why one mortgagee cannot take advantage of another mortgage holder. There it is said:

"* * * It has been held that successive mortgagees are in the same category as tenants in common, as respects payment of taxes on mortgaged premises, and that the equities of successive mortgagees as to each other respecting taxes paid by them are unaffected by a statute authorizing the tacking of the payment to the mortgage debt."

Supporting the reasoning set out in C.J.S. supra, is the case of Norton v. Myers, 74 Minn. 484, 77 N.W. 298, 539, wherein it was held:

"As between the first mortgagee and the second mortgagee, it is the duty of each to pay the taxes; and one cannot acquire a tax title on the mortgaged premises, as against the other. This rule is not changed by section 1599, Gen.St.1894."

In the body of the opinion the court stated:

"* * * We have held that, notwithstanding section 1599, one tenant in common cannot acquire a tax title, as against his co-tenant. Easton v. Scofield, 66 Minn. 425, 69 N.W. 326. It is there said: 'The decisions hold that his co-tenant is one of the parties whom the purchaser is "equitably bound to protect." It is as much the duty of one tenant in common to pay the taxes

as of another. Equity holds that one such tenant must protect his co-tenant as much as he protects himself. The duty of all is the duty of each in that respect.' So may it be said that, as between the first mortgagee and the second mortgagee, it is as much the duty of the one to pay the taxes as it is of the other. In equity it was the duty of the first mortgagee to pay the taxes for himself and the second mortgagee. It was the duty of the second mortgagee to pay the taxes for himself and the first mortgagee. The duty of both is the duty of each in this respect. The decisions that hold that one mortgagee cannot acquire a tax title as against the other liken it to the case of tenants in common. * * *"

In the later case of Des Moines Sav. Bank & Trust Co. v. Eisenmenger, 183 Minn. 46, 235 N.W. 390, it was held:

"In respect to payment of taxes on the mortgaged premises, successive mortgagees are in the same category as tenants in common. One of them purchasing at a delinquent tax sale cannot acquire a tax title to the exclusion of another. All he is entitled to is reimbursement, a right to be protected by an equitable lien."

We have never had an occasion to determine the right of one mortgagee to wipe out the lien of another mortgage by acquiring a tax deed to the property, but we have passed on the issue as between tenants in common.

In the case of Ellis v. Williams, Okl., 297 P.2d 916, we held:

"Cotenant owners of an estate in lands stand in relation to each other of mutual trust and confidence, and neither will be permitted to act in hostility to the other in reference to the joint estate."

For additional cases see Oklahoma Digest, Tenancy in Common, ☞20(1). For cases from other states as to right of the second mortgagee to acquire a tax title as against the holder of the first mortgage, see Koch v. Kiron State Bank, 230 Iowa 206, 297 N.W. 450, 140 A.L.R. 273; City of St. Louis v. Koch, (Mo.App.) 156 S.W.2d 1; Baird v. Fischer, 57 N.D. 167, 220 N.W. 892; Swope v. Jordan, 107 Tenn. 166, 64 S.W. 52; Hill v. Buffington, 106 Wis. 525, 82 N.W. 712; In re Hoyt's Estate, 246 Iowa 292, 67 N.W.2d 528; Allison v. Corson, 8 Cir., 83 F. 752; Riley v. Bank of Commerce of Roswell, 37 N.M. 338, 23 P.2d 362; Chartz v. Cardelli, 53 Nev. 13, 291 P. 311, and Horton v. Ingersoll, 13 Mich. 409.

■ We therefore hold as between successive mortgagees, one holding a tax deed has merely a lien enforceable under his mortgage, and the tax deed puts him in no better position than would a tax receipt.

Our attention is directed to our decision in Bereman v. Grant, 195 Okl. 330, 157 P.2d 743, where we ruled against the right of a son to acquire a tax title against a mortgagee of his father's land, and to this quotation from that opinion:

"We think taking into consideration the evidence as a whole the clear weight thereof shows such a fiduciary relationship existing between the father and the son and such a moral duty resting upon the defendant Guy Grant to see that the taxes were paid which would make it inequitable to permit him to acquire a tax title against either his father or the mortgagees."

That case is not directly in point, but the fact situations make that case and this one interesting to compare.

■ During the trial of the cause the attorneys for plaintiff tendered the full amount of taxes paid by Effie D. Crisp. She refused the tender on the ground the plaintiff had testified he was without funds or property upon which the amount paid by Effie D. Crisp could be raised and that the tender was insufficient. However, the attorney making the tender informed the trial court that money could be produced within a short time and we hold the tender, if any was necessary, and as to the necessity of which we do not pass upon at this time, was sufficient.

The cause is therefore reversed and remanded with instructions to the trial court to vacate the judgment; to grant plaintiff thirty days in which to refund the amount of taxes paid by Effie D. Crisp, with lawful interest thereon, and upon failure to pay such amount, judgment be entered by the trial court foreclosing the tax lien of the said Effie D. Crisp.

Reversed and remanded with instructions.

HALLEY, V. C. J., and DAVISON, WILLIAMS and BERRY, JJ., concur.

BLACKBIRD, C. J., and IRWIN, J., dissent.

IRWIN, Justice (dissenting).

The issue as to whether a junior mortgagee can obtain a County Treasurer's Tax Deed and acquire title against the mortgage lien of a senior mortgagee has never been presented to or determined by this Court. However, it is well established in this jurisdiction that in the absence of an obligation or duty on the part of a mortgagee to pay taxes, such mortgagee is not disqualified to acquire a County Treasurer's Tax Deed and assert his title acquired through such tax deed against the mortgagor. See Jones v. Black, 18 Okl. 344, 88 P. 1052, 90 P. 422; Owens v. Williams, 180 Okl. 324, 68 P.2d 836; Stith v. Gidney, 193 Okl. 175, 141 P.2d 1003; and Hearn v. Yoder, 193 Okl. 353, 143 P.2d 1009.

Although Oklahoma has followed the above rule, the general rule (see 37 Am. Jur. Mortgages, sec. 1163) and the weight of authority (see 140 A.L.R. 302) is that a mortgagee may not, as long as the relation of mortgagor and mortgagee exists, obtain title to the property by means of a tax sale, as against the mortgagor by means of a tax sale. Also, the general rule (see 37 Am. Jur. Mortgages, sec. 1165) and the weight of authority (see 140 A.L.R. 322) is that a junior mortgagee cannot cut off the rights of a senior mortgagee by purchasing the mortgaged property at a tax sale.

The State of New Mexico follows the general rule and the weight of authority announced in A.L.R. and Am.Jur., and in discussing the rights of mortgagors and mortgagees where a tax deed was involved in Riley v. Bank of Commerce of Roswell, et al., 37 N.M. 338, 23 P.2d 362, the Supreme Court held:

> "Mortgagee cannot acquire tax title to mortgaged property as against prior mortgagee, but is entitled only to reimbursement of, and equitable lien for, taxes paid."

In the opinion of the New Mexico Court, the Court said:

> "In Hall v. Wescott, 15 R.I. 373, 5 A. 629, it was held: 'A mortgagee, either in possession or out of possession, is not entitled to set up, as against the mortgagor or the other mortgagees, a tax title to the mortgaged estate purchased by him at a tax sale.'
>
> "The court, after citing many authorities in support of its holding, remarked: 'Other cases adopt a narrower view, and maintain that any person can become a purchaser who is not under any legal duty to pay the taxes'—citing Williams v. Townsend, 31 N.Y. 411, Waterson v. Devoe, 18 Kan. 223, and two Arkansas cases (Bettison v. Budd, 17 Ark. 546, 65 Am.Dec. 442, and Ferguson v. Etter, 21 Ark. 160, 76 Am. Dec. 361) and we add Jones v. Black, 18 Okl. 344, 88 P. 1052, 90 P. 422, 11 Ann.Cas. 753, as being properly classified therewith. See 19 R.C.L. 'Mortgages,' § 174, note 4. * * *" (emphasis ours)

In the Oregon Mortgage Co., Limited v. Leavenworth Securities Corporation, 197 Wash. 436, 86 P.2d 206, cited in the majority opinion, the Supreme Court of Washington said:

> "Nor do we think there can be any doubt about the rule of law applicable. According to the text writers, the rule is universal that one interested in land with others, all deriving their interest from a common source, cannot assert an absolute title to the land through a tax deed, to the injury of such others.

2 Jones on Mortgages (8th ed.), § 841; 3 Cooley on Taxation (4th ed.), § 1437.

"This court has applied the rule in at least two cases, as between a mortgagor and mortgagee. Shepard v. Vincent, 38 Wash. 493, 80 P. 777; Maher v. Potter, 60 Wash. 443, 111 P. 453. In those cases, it was held that a mortgagee could not assert a subsequently acquired tax title against the mortgagor.

"The corollary rule is equally well established that a junior mortgagee cannot assert a tax title against a senior mortgagee. 19 R.C.L. 398; Fair v. Brown, 40 Iowa 209; Garrettson v. Scofield, 44 Iowa 35; Woodbury v. Swan, 59 N.H. 22; Smith v. Lewis, 20 Wis. 350; Middletown Savings Bank v. Bacharach, 46 Conn. 513."

It therefore seems that in jurisdictions which hold that a mortgagee, so long as the relationship of mortgagor and mortgagee exists, cannot acquire title to the mortgaged property as against the mortgagor in tax sale proceedings, also follow the rule that a junior mortgagee cannot cut off the rights of a senior mortgagee by purchasing the mortgaged property through tax sale proceedings.

In Oklahoma, a real estate mortgage is merely to secure payment of a debt and transfers no title to, nor does it create a trust in the mortgaged property; it simply creates a lien against the property for the amount of the debt. See Pierce v. Duckett, 157 Okl. 20, 10 P.2d 697.

In Kehlier v. Smith, 112 Okl. 183, 240 P. 708, we quoted with approval the following language:

"'The mortgage is not a conveyance, nor does it confer upon the mortgagee any estate in land. The right of interest of the mortgagee * * * is for all purposes and under all circumstances personal assets.'"

See also Abraham v. Mike, 178 Okl. 597, 63 P.2d 743.

Our statutory provisions do not expressly or impliedly provide for notice to be served upon a mortgagee when application is made for a tax deed, but if the holder of a tax certificate omits to give notice to the mortgagee, the lien of the mortgagee is not divested or in any way impaired by the execution of the tax deed by reason of Section 7, Art. 2, of the Oklahoma Constitution and the due process clause of the Fourteenth Amendment to the Federal Constitution. See Foster v. Marshall, 141 Okl. 246, 284 P. 882; Savery v. Graves Farm Loan Investment Co., 157 Okl. 173, 11 P.2d 462; and Adams v. Rogers, 158 Okl. 163, 13 P.2d 170. The mortgagee in the instant action was served with proper notice that an application for a tax deed had been made.

Title 68 O.S.1961 § 451, provides that "If no person shall redeem such lands within two years, at any time after the expiration thereof, and on production of the certificate of purchase, the treasurer of the county in which the sale of such land took place shall execute to the purchaser, his heirs or assigns, a deed for land remaining unredeemed, which *shall vest in the grantee an absolute estate in fee simple in such lands, * * *.*" (emphasis ours)

See also Title 68 O.S.1961 § 452.

In Stith v. Gidney, 193 Okl. 175, 141 P.2d 1003, we said:

"* * * A mortgagee not in possession is neither legally nor morally bound to pay the taxes assessed against the mortgaged property and may acquire a tax sale certificate, obtain a tax deed to the property and assert the tax title against the mortgagor. *A mortgagee is not disqualified to purchase the mortgaged property at tax sale and may assert such tax title against the world. * * *"* (emphasis ours)

In my judgment the case of Bereman v. Grant, 195 Okl. 330, 157 P.2d 743, is no authority for the issue involved in this action. In the Bereman case a suit was brought to foreclose a mortgage. A son of the original owner and mortgagor, who was a defendant in the action, defended on the ground that he acquired the property

through a Commissioner's deed and asserted title to the property. The evidence shows the son and father were occupying the property together, at the time the tax title was acquired and had been so occupying the premises together for six or seven years prior thereto; that they jointly farmed the land. There was some evidence from which a conclusion could be drawn that they jointly participated in the profits. The son looked after his father's business. The son listed his father's property both personal and real for taxation and paid the taxes thereon.

This court found the evidence insufficient to show there was any conspiracy or that there was any agreement between the son and father that the son should acquire title to the property for and on behalf of the father. This court did find, however, that the evidence was sufficient from which the court might have drawn the conclusion that a fiduciary relationship existed and that the son had such an interest in the property as would have precluded him from acquiring a tax deed. In that case we held that the son could not acquire a tax deed in the presence of facts indicating and showing a moral obligation upon the son to see that the taxes were paid.

The facts in that case are distinguishable from the facts in the case at bar. Here, the mother, Effie D. Crisp, was never in possession of the property; she never received any benefits from the property; she was not morally or legally obligated to pay the taxes either as a mother or as a mortgagee, nor had she ever paid the taxes except through purchasing the tax certificate. She had the legal right to purchase the tax certificate and acquire the County Treasurer's Tax Deed.

Since the law is well established in this jurisdiction that in the absence of an obligation or duty on the part of the mortgagee to pay taxes, such mortgagee is not disqualified to acquire a County Treasurer's Tax Deed and assert his title acquired through such tax deed against the mortgagor; and, since our statutory provisions specially provide that a tax deed "shall vest in the grantee an absolute estate in fee simple [title] in such lands", without qualifications; and, since the mortgagee in the instant action was given notice of the application for the tax deed and could have protected his rights; and since, in my judgment, a mortgagee owes no more duty to another mortgagee than he owes to a mortgagor, I am of the opinion that the mortgagee was a qualified purchaser of the tax deed and can assert her title against the world (see Stith v. Gidney, supra,) which would include the senior mortgagee in the instant action.

For the foregoing reasons, I dissent to the opinion promulgated by a majority of my associates.

I am authorized to state that BLACK-BIRD, C. J., concurs in the views herein expressed.