Ray H. BUCHANAN, Plaintiff
and Appellee,

v.

Robert P. HANSEN and Marilyn
W. Hansen, Defendants and
Appellants.

No. 890242.

Supreme Court of Utah.

July 18, 1991.

Rehearing Denied Dec. 5, 1991.

Jackson Howard, Leslie W. Slaugh, Provo, for plaintiff and appellee.

Leroy S. Axland, J. Michael Hansen, Salt Lake City, for defendants and appellants.

HOWE, Associate Chief Justice:

Defendants Robert P. and Marilyn W. Hansen appeal from a summary judgment in favor of plaintiff Ray Buchanan quieting title in him to certain real property in Utah County on which Hansens held a lien under a trust deed executed by the owner. The trial court granted Buchanan's motion for summary judgment on the ground that his purchase of the property at a May 1987 tax sale for delinquent 1982 taxes extinguished Hansens' lien. In reviewing a grant of summary judgment, we accord no deference to the trial court's ruling and review it for correctness. *Utah State Retirement Office v. Salt Lake County*, 780 P.2d 813, 815 (Utah 1989); *CECO v. Concrete Specialists*, 772 P.2d 967, 969 (Utah 1989).

A business enterprise known as 1555 Canyon Road Partnership owned a parcel of real property on which a Picadilly Fish and Chips restaurant was located. The

partnership executed a trust deed on the property to Hansens to secure its $200,000 promissory note to them. The partnership also executed a trust deed to Buchanan to secure its $100,000 promissory note to him. Both trust deeds were recorded on the same date one minute apart. Hansens' trust deed was recorded first; therefore, it was senior.

Buchanan received no payment on his note and prepared to foreclose his trust deed. The partnership mortgagor stipulated to a judgment. At an execution sale, Buchanan purchased the property. He received a sheriff's deed dated April 24, 1986. Buchanan thus became legal owner of the property, subject to Hansens' $200,000 lien. Besides failing to pay its note to Buchanan, the partnership owner did not pay the 1982 property taxes. Consequently, the property was scheduled for public tax sale on May 27, 1987. In April of 1987, Buchanan received notice of the public sale. Notice was also sent to Hansens' counsel, but he misplaced it. Consequently, Hansens had no actual notice of the tax sale prior to the date of the sale. At the sale, Buchanan paid the 1982 taxes, together with the 1983, 1984, 1985, and 1986 taxes, which were also delinquent, plus penalties and interest in the approximate amount of $24,500 and received a tax deed from Utah County.

Buchanan then commenced this action to quiet title to the property. In granting summary judgment to Buchanan, the trial court ruled that Buchanan had no duty to pay any of the delinquent taxes because they had not been assessed against him. Therefore, he could strengthen his title by purchasing the property at the tax sale. Hansens appeal, contending that both parties had an interest in the property and thus Buchanan's payment at the tax sale was in reality a "redemption" by a party in interest on behalf of all other parties in interest. Buchanan responds that since the delinquent taxes had not been assessed against him, he became a "purchaser" at the tax sale, thereby clearing out all other interests.

■ The issue before the court then is whether a person who holds a lien on prop-erty at a time the property taxes become delinquent may later purchase the property at a tax sale and thereby extinguish other liens against the property. The purpose of a public tax sale is to provide a means whereby a party with no interest in the property can pay delinquent taxes in exchange for a clear title to the property: "The law of tax sales is designed to give strangers to the property a speedy method of acquiring merchantable title to the property so the property can get back into the stream of commerce so that future taxes can be collected." *Vulcan Materials Co. v. Bee Constr. Co.*, 101 Ill.App.3d 30, 56 Ill.Dec. 465, 427 N.E.2d 797 (1981), *rev'd on other grounds*, 96 Ill.2d 159, 70 Ill.Dec. 465, 449 N.E.2d 812 (1983).

The procedure for collection of property taxes is statutory. Assessment of property taxes is one of the duties of the county assessor:

> The county assessor must, before the first day of June of each year, ascertain the names of all taxable inhabitants and all property in the county subject to taxation and must assess the property to the person by whom it was owned or claimed ... at 12 o'clock m. on the first day of January next preceding....

Utah Code Ann. § 59–5–4 (1981) (current version at Utah Code Ann. § 59–2–303 (1987)). Thus, property is assessed annually to the owner as of January 1. Taxes become delinquent on November 30 of the same year. Utah Code Ann. § 59–10–26 (1981) (current version at Utah Code Ann. § 59–2–1331 (Supp.1991)). Unless the delinquent taxes are paid by January 15 of the following year, the property is "sold" on that day to the county at a "preliminary tax sale":

> At 12:00 noon on the 15th day of January, all real estate subject to a lien for any taxes which are then delinquent for the preceding year shall be deemed to have been sold to the county at a preliminary sale to pay the taxes, penalty, and costs for which the real estate is liable.

Utah Code Ann. § 59–10–33 (1967) (current version at Utah Code Ann. § 59–2–1336 (Supp.1991)).

This preliminary tax sale initiates the period of redemption, which begins the January 15 after the taxes are delinquent and runs for four years through the following April 1. Utah Code Ann. § 59–10–56 (1981) (repealed by 1988 Utah Laws ch. 3, § 203). A party in interest may "redeem" the property for the amount of taxes in order to avoid losing his or her interest when the property is offered to the public at a tax sale. This redemption process is known as a "private sale" and is specifically referred to in the code:

> At any time after the sale and before the time for redemption has expired, the county treasurer is authorized and required, at *private sale*, ... to sell and assign the interest of the county in any of the real estate sold to the county for delinquent taxes to any person holding a recorded mortgage or other lien against such real estate, upon payment of the amount of the delinquent taxes, interest, penalty and costs thereon.

Utah Code Ann. § 59–10–37 (1953) (emphasis added) (repealed by 1988 Utah Laws ch. 3, § 195). As lienors, both Buchanan and Hansens could have redeemed the property between January 15, 1983, and April 1, 1987.

The question then arises whether the law should permit a lienor such as Buchanan, who has the right to redeem, to let the redemption period run without paying the property taxes at a private sale but pay them subsequently at a public tax sale and thereby extinguish Hansens' $200,000 lien. If Buchanan were a stranger to the property, that is, had no interest in it, it is clear that he could do so. Utah Code Ann. § 59–10–64 (1981) (current version at Utah Code Ann. § 59–2–1351 (Supp.1991)); *Tuft v. Federal Leasing*, 657 P.2d 1300, 1303 (Utah 1982) (citing *Hanson v. Burris*, 86 Utah 424, 439, 46 P.2d 400, 409 (1935), *aff'd sub nom Ingraham v. Hanson*, 297 U.S. 378, 56 S.Ct. 511, 80 L.Ed. 728 (1936)). However, Buchanan was not a stranger to the property. He was a junior lienor until April 24, 1986, when he became the legal owner by foreclosure, subject to Hansens' interest.

This court, as well as courts in other jurisdictions, has held that certain parties may not "purchase" at a tax sale. These parties may redeem but not purchase because they have a duty to pay the property taxes. Therefore, their payment of delinquent taxes at a public tax sale simply regains the same title they held before the tax sale. The rule has often been stated: A party who has a duty to pay taxes may not strengthen title to the property by purchase at a tax sale. *Dillman v. Foster*, 656 P.2d 974, 979 (Utah 1982); *see also, Marchant v. Park City*, 788 P.2d 520, 523 (Utah 1990); *Crofts v. Johnson*, 6 Utah 2d 350, 353, 313 P.2d 808, 810 (1957); *Hadlock v. Benjamin Drainage Dist.*, 89 Utah 94, 100, 53 P.2d 1156, 1159 (1936) (Hanson, J., concurring).

The legal owner as of January 1 of the tax year is held to have a *duty* to pay the taxes for that year and therefore has a *right* to redeem but not purchase at the ensuing public tax sale. *Dillman v. Foster*, 656 P.2d at 979. As stated in *Dillman*, the rule is founded on the principle of "disallowing a benefit to flow from a dereliction of duty...." *Id.; see also Tuft v. Federal Leasing*, 657 P.2d 1300, 1303 (Utah 1982) (owner cannot purchase at a public tax sale and by so doing extinguish liens on the property).

However, our cases have not limited those who have a *duty* to pay the taxes to only the owner. In *Crofts v. Johnson*, the mortgagee was held to owe no duty to the mortgagor to pay the taxes, as payment of taxes is an obligation of the mortgagor. However, we held that as between the mortgagee and the taxing authority, the former does have a duty to pay. Thus, the mortgagee was not permitted to purchase at the public tax sale and extinguish the mortgagor's interest. This court reasoned that due to its interest in the property, the mortgagee has the *right* to redeem the property in order to protect that interest. 6 Utah 2d at 352, 313 P.2d at 809.

The *Crofts* court emphasized the public policy reasons for refusing to reward a party with an interest in the property for not paying property taxes:

It is the policy of the law to see that all property and propertyholders bear their fair share of tax responsibility. Therefore, no incentive, even a dubious one, of being able to acquire a tax title, should be held out to the mortgagee not to pay taxes on property in which he has an interest to protect. Sound public policy should encourage both the mortgagor and the mortgagee to promptly pay the taxes on such property.

. . . .

... Our rule tends to encourage those having an interest in the property to pay their taxes promptly; avoids the potential inequities discussed above, and reaches a just result because the mortgagee is permitted to add to the mortgage debt expenditures made for protection of the property plus interest thereon.

6 Utah 2d at 354–55, 313 P.2d at 810–11. Thus, the mortgagee, after paying taxes at a public tax sale, gains only a lien as against the mortgagor in the amount of the taxes paid on the latter's behalf.

The great majority of cases from other states hold that one lienor may not purchase at a tax sale so as to defeat another lien against the same property. Annotation, *Right of mortgagee or other lienor to acquire and hold tax title in his own right as against persons owning other interests in or liens upon property*, 140 A.L.R. 294, 322 (1942); *In re Application of County Collector*, 131 Ill.App.3d 939, 941, 87 Ill.Dec. 98, 100, 476 N.E.2d 800, 802 (1985). Many courts rely on the theory that all lienors derive their security from a "common fund" and, therefore, it would be inequitable for one lienor to deplete the security at the expense of the other lienors:

The rationale for this rule is that equity regards the land as a *common fund* for the payment of all liens and mortgages, and it would be inequitable and a fraud for one lienor to acquire title to the land by a tax sale and use it to destroy the claim of another lienor or mortgagee. The lienor is authorized to redeem from the tax sale, and equity will not allow him to acquire the title for an inconsiderable sum when he was authorized to remove the trifling incumbrance by redemption. Equity will relieve against such oppression and teach the grasping creditor moderation in his demands, and that he cannot destroy others to build up his own fortunes.

131 Ill.App.3d at 941, 87 Ill.Dec. at 100, 476 N.E.2d at 802 (emphasis added) (citing *Koch v. Kiron State Bank*, 230 Iowa 206, 297 N.W. 450 (1941)); *see also Miller v. First Nat'l Bank of Englewood*, 164 Colo. 449, 457, 435 P.2d 899, 903 (1968) (due to its interest in the "common fund," the lienor may not purchase at a tax sale and thus extinguish the rights of the mortgagor); *Moore v. Crisp*, 383 P.2d 221, 223 (Okla. 1963) (citing *Gorton v. Paine*, 18 Fla. 117 (1881) (the property is a "common fund" for the payment of both liens, and therefore, it would be fraud for one lienor to destroy the other liens by paying delinquent taxes at the public tax sale)); *Oregon Mortgage Co. v. Leavenworth Secs. Corp.*, 197 Wash. 436, 86 P.2d 206 (1938) (one interested in land with others, all deriving their interest from a common source, cannot assert an absolute title to the land through a tax deed to the injury of the other lienors).

■ We conclude that Buchanan did not strengthen his title to the Picadilly property by payment of the delinquent taxes at the May 1987 tax sale. He simply redeemed the property, and therefore, the property remains subject to Hansens' $200,000 lien.

Reversed and remanded for further proceedings consistent with this opinion.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.